**SCOGGINS et al.**

v.

**CAMERON COUNTY WATER IMP. DIST. NO. 15.**

No. 10177.

Court of Civil Appeals of Texas.

Austin.

Jan. 6, 1954.

Rehearing Denied Jan. 27, 1954.

Carter, Stiernberg, Blanton & Skaggs, Harlingen, for appellants.

Paul G. Greenwood, Harlingen, for appellee.

GRAY, Justice.

This appeal is from an order granting appellee a temporary injunction restraining appellants from taking water from a drainage ditch maintained by Cameron County Water Improvement District Numbers One and Three.

All parties assert a right to take water from the ditch under permits granted by the Board of Water Engineers for irrigation purposes.

The Water Improvement Districts One and Three are not parties here, and their right to maintain the drainage ditch in question is not here challenged. However the evidence does establish that for many years water from rainfall and other sources has been collected in the ditch and has been used for irrigation. The names of the districts imply that they exist under the provisions of Art. 7880–1 et seq., Title 128, Chapter 3A, Vernon's Ann.Civ.St. The record does not further advise us. And if it be pertinent to our decision we are not advised as to the proprietory or usufructuary right to the water in the ditch but we think we may assume such right is with the owners of the ditch.

Appellee is a water improvement district and on June 3, 1930, it acquired permit No. 1118 which was issued to Finley Ewing on March 11, 1929. This permit authorized its owner to divert, impound and appropriate 3656 acre feet of water per annum from the unappropriated public waters from a watershed containing approximately 20,000 acres which is substantially described "and including all other territory draining into said area." The permit provided that the water was to be measured at the points of diversion, and further that the allowance of water was made with the express provision that the amount of water "shall be available at the points of diversion from the said sources of supply by the process of pumping and gravity, and the right herein granted does not, and shall not extend to any of the waters of the said watershed and the Rio Grande, at any point, or points, other than at the points herein described, and for the specific purpose herein stated."

The permit also authorized the taking from the unappropriated water of the Rio Grande River by pumping at a designated plant "to supply, at all times, any deficiency in the quantity of water derived from the above described" 20,000 acre watershed.

Appellants claim their rights to take water from the drainage ditch by virtue of permits Nos. 1380 and 1409. (Also by prescription later noticed.) No. 1380 was issued October 15, 1945, and authorized the pumping of water, to be measured at the point of diversion in an amount not to exceed 1,000 acre feet per annum and at a rate not to exceed 15 cubic feet per second, of the unappropriated waters of the drainage ditch above named "at times when water therein is not needed for prior appropriators."

Permit No. 1409 was issued July 19, 1947, and authorized the pumping of 600 acre feet of water per annum. The water to be measured at the point of diversion, pumped at a rate not to exceed 6 cubic feet per second and taken from the unappropriated water of the above-named drainage ditch. The permit provided that: "The privileges granted by this permit are subsidiary to the rights of all prior record appropriators of water from the said source of supply."

The lands described in permits 1380 and 1409 are outside of the 20,000 acre water-shed described in appellee's permit. Appellant's points of diversion of water are upstream from appellee's and the drainage ditch was constructed substantially along the course of the natural drainage of the area.

The evidence shows that for some time prior to the filing of this suit, February 11, 1953, there had been a drought in the area and that the runoff of water from rainfall had been very little. Appellee constructed a dam with a spillway in the ditch below its point of diversion. This dam impounded the water reaching it and little, if any, water has gone over this spillway for the past few months. During the drought the main supply of water to the ditch has been from seepage. This water has collected at the points of diversion by appellants but in such limited quantity as to supply their pumps for only a few hours at a time. When the ditch was pumped dry the pumps would be shut off and the water would again collect. If appellants did not pump the water then it would flow down the ditch and be available to appellee. The expert testimony shows that the seepage comes from an area of approximately 30,000 acres of land with a subsurface soil of Victoria fine sandy loam which contains percolating water that seeps or drains into the ditch. The 20,000 acre watershed described in appellee's permit has a subsoil of 13,000 acres of clay, through which there is no percolation or seepage of water, and 7,000 acres of Victoria fine sandy loam. All, or practically all, of the water in the ditch since November, 1952, has come from seepage and has been supplied in the ratio of seven parts from the 20,000 acre watershed described in appellee's permit to thirty parts from outside such watershed.

Appellee's prayer for temporary injunction is:

"* * * and that upon hearing this court issue a temporary injunction restraining the Defendants and each of them, their agents and servants, from diverting the water of said drain ditch in excess of the amount allowed by law and by said permit, and in this connection Plaintiff says that within the foreseeable future there will not be in said drain ditch passing the points of diversion of said Defendants, more than sufficient water to supply the Plaintiff and its water users, nor more than Plaintiff is entitled to divert under its said permit, and that upon final hearing herein said injunction be made permanent."

The trial court's order is that appellants

"* * * shall desist and each of them are hereby enjoined from pumping or diverting water from the drainage ditch in question during the time that water is being pumped from said drainage ditch by the Plaintiff, except in case where water is flowing from the drainage ditch below the dam of the Plaintiff, which dam is at a point on the drainage ditch immediately below the point of diversion of the Plaintiff, it being the intention of the Court that said Defendants shall not pump or divert water from said drainage ditch except at times when there shall be more water in said drainage ditch than the plaintiff district shall be utilizing."

The parties did not plead and did not prove that the amount of water taken by them was measured nor that it was, or was not, in excess of the amount to which they were entitled under their respective permits. However both the pleadings and the proof was to the effect that all parties needed more water than they were getting and that a shortage of water for irrigation had existed for several months prior to the time of the trial.

While the period of time, measured by actual dates, in which appellee under its permit is entitled to take 3,656 acre feet of water is not given, yet if such period be considered for the calendar year of 1953, then the date of the filing of the suit together with the allegations of the petition and the evidence supports a reasonable conclusion that a supply of 3,656 acre feet of

water has not been available to or taken by appellee.

Appellee's pleading alleged its own permit and those of appellants, and further that there was no unappropriated water in the ditch and had not been for the past several months, that all of the water flowing in the ditch at the points of diversion by appellants has been appropriated and is the property of appellee under its permit, further alleged a shortage of water to supply its needs for the last month, that appellants have been unlawfully diverting the water from the ditch, and their refusal to desist. We think the petition is not subject to the complaint that it is vague, uncertain and indefinite but sufficiently alleged that appellee was entitled to take the water being taken by appellants. It was also sufficient to negative reasonable inferences that appellants were entitled to take the water under other supposable facts and was sufficient to support the trial court's order. Gonzalez v. Sociedad Mutualista Protectora Benito Juarez, Tex.Civ.App., 211 S.W.2d 245.

Ewing's application for permit 1118, which was introduced in evidence, refers to the drainage ditch in question by stating that:

"The said public waters so desired to be appropriated are the following, to-wit:

"(a) There has been constructed in Cameron County Water Improvement District Number One and in said School Survey No. 25 a drainage system shown and outlined on the map accompanying this application; which drainage system, together with all other ditches, ravines and depressions connecting therewith, collects all drain, seepage, waste, flood, storm and rain waters within the hereinbefore described watershed, and other territory tributary thereto, and has a main outlet which delivers all of such waters to the lands covered by this Application, and hereinafter described, at a point * *.

"Applicant desires to appropriate all of said waters, or so much thereof as may be necessary for the use of the said land hereinafter described."

Under the facts of this record we think appellants cannot complain that appellee did not show its authority, by permit or by easement, to take water from the drainage ditch.

The testimony of appellant E. T. Scoggins, upon which appellants rely to support their plea of a prescriptive right to take water from the drainage ditch, is that he had pumped water from the ditch each year since 1939; that he had stopped pumping during some of that time but had never gotten permission from anyone to resume pumping; that he had stopped pumping upon request of appellee when there was not sufficient water for appellee. He did not however say that he was pumping under any claim of right, or that he was or was not pumping under arrangements with the owners of the ditch. A prescriptive right is not shown "by the overwhelming preponderance of the evidence." 44 Tex.Jur. pp. 79–80, Secs. 61 and 62.

In Harrell v. F. H. Vahlsing, Inc., Tex. Civ.App., 248 S.W.2d 762, error ref. n. r. e., the court had facts before it similar to the facts here. There the court considered water collected in a drainage ditch principally from seepage, as is the case here, and held that the owner of the drainage ditch was possessed of a usufructuary right in and to the water as to all persons except the State under the doctrine of developed waters. The court quoted from Kirk v. Hoge, 123 Va. 519, 97 S.E. 116, 120, a part of which quotation is:

"The right of those owning land bordering upon or through which artificial channels pass to the use of the water flowing therein is not a natural right, nor a corporeal right, but an incorporeal right, which can be acquired only by grant, express or implied, or by prescription. Angell on Water Courses, § 90, p. 91; 3 Farnham on Waters and Water Courses, § 820."

Appellants' rights to take water from the drainage ditch is limited to the rights granted in their respective permits and as is therein authorized, but subject, of course, to the rights of prior appropriators, appellee being one.

The rules of law applicable to this appeal are:

"On application for a temporary writ the right to be protected and the impairment thereof need not be established with absolute certainty. All that is required is proof of a probable right and of danger to that right unless the injunction be granted." 24 Tex.Jur. p. 183, Sec. 136.

"In all appeals from interlocutory orders granting or refusing a writ or dissolving or refusing to dissolve one, the sole question is whether the trial court abused its discretion in entering the order appealed from. Many cases enunciate the rule that the grant or refusal of an injunction or a dissolution or refusal to dissolve will be reversed only when a clear abuse of discretion is shown; and if the order was based on conflicting evidence or diverse inferences it will not be disturbed. The evidence is not reviewed for sufficiency as it would be upon appeal from a final judgment, but only to see if it supports the court's exercise of discretion." 24 Tex.Jur. pp. 313–314, Sec. 253.

These rules have received the approval of our Supreme Court. Railroad Commission v. Shell Oil Co., 146 Tex. 286, 206 S.W.2d 235.

Under the pleadings and the proof appellee has shown a probable right to the water in question and a probable injury to such right. This being all that appellee was required to show in order to obtain the temporary injunction complained of and an abuse of discretion on the part of the trial court in granting such injunction is not shown.

Appellants complain that the trial court's order is broader than the injunction prayed for by appellee.

It seems to be well established that to be entitled to injunctive relief the petition must specify the relief sought and a court is without authority to grant relief beyond that so specified. Fletcher v. King, Tex.Civ.App., 75 S.W.2d 980, error ref.; 24 Tex.Jur., Injunctions, Sec. 179.

In Villalobos v. Holguin, 146 Tex. 174, 208 S.W.2d 871, 875, the court said:

"We recognize that the rule is, as stated in 43 C.J.S., Injunctions, § 211, that an injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. * * * This view gives effect to the equally important rule that the decree must not be so broad as to enjoin a defendant from activities which are lawful and a proper exercise of his rights."

In Transport Co. of Texas v. Robertson Transports, Tex.Sup., 261 S.W.2d 549, 553, the court interpreted Rule 683, Texas Rules of Civil Procedure, to require

" * * * only that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue. If the party enjoined wishes detailed findings of fact and conclusions of law he may seek them under the provisions of Rules 296 and 385 (e)."

Appellants' permits are conditioned on the needs of prior appropriators of water and appellee's prayer is that they be enjoined from taking water in excess of the amount allowed by law and the permits. The amount of water allowed to be taken by law here would be the amount allowed by the permits. This amount is specified in the permits and the right to take it is

made subject to the right of appellee, **a** prior appropriator, to take water.

We think the trial court's order should be so modified as to enjoin appellants from taking water from the ditch at all such times as the water therein is not available to appellee at its point of diversion and until it shall have taken 3,656 acre feet for the calendar year.

The judgment of the trial court is accordingly so modified and as modified it is affirmed.

Modified and affirmed.