Harry WINSLOW et al., Appellants,

v.

DUVAL COUNTY RANCH COMPANY, INC., Appellee.

No. 7517.

Court of Civil Appeals of Texas, Beaumont.

Jan. 23, 1975.

Rehearing Denied Feb. 20, 1975.

Wood, Burney, Nesbitt & Ryan, Corpus Christi, Cox, Smith, Smith, Hale & Guenther, Morrison, Dittmar, Dahlgren & Kaine, San Antonio, Grose, Nixon & Erck, Alice, for appellants.

Stiernberg, Skaggs & Koppel, Harlingen, for appellee.

KEITH, Justice.

Several defendants have appealed from an order granting a temporary injunction which restrained each defendant from:

". . . pumping, flowing or producing any petroleum or oil from leases

located on the following sections of land in Duval County, Texas from which the aforesaid Defendants have been producing petroleum and oil, to-wit: [here follows the name of each individual defendant and the particular section applicable to his operations]."[1]

Before these defendants, our appellants, were made parties to the suit, plaintiff below had obtained a temporary injunction against two other defendants who took an appeal to the Fourth Court of Civil Appeals at San Antonio. The basic pleadings involved in this case are identical to those summarized in the prior appeal now reported as Speedman Oil Co. v. Duval County Ranch Co., Inc., 504 S.W.2d 923, 925–926 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.), to which we refer. In our subsequent discussion we will refer to this as the "Speedman Case."[2]

We will refer to Duval County Ranch Co., Inc., simply as plaintiff. The defendants will be grouped as their interests appear to be joint, namely: Winslow-Duval; Chiles-Arnold; Beissner; and Lynd-Sparks. Our record of a trial extending over a period of several months is extremely lengthy and, in our effort to condense the statement, many facets thereof may escape specific mention. In addition, several of the defendants urge similar points of error, in which event, one disposition will serve for all such overlapping contentions.

### Background

Plaintiff was created in 1919 with approximately 144,000 acres of land situated mostly in Duval County. During the nineteen twenties, mineral rights were leased by "base leases." Defendants own, by unchallenged mesne conveyances, small tracts carved out of the base leases from the assignees of the original lessees.

Much of the plaintiff's land had been producing oil since the early nineteen thirties and most of the parties agree that the land had been overproduced by the nineteen forties when secondary operations began in an effort to recover the remaining oil in place.

Each defendant (except Lynd-Sparks and Chiles) was engaged in the production of oil from his own particular section of plaintiff's land by virtue of an assignment from the owner of one of the base mineral leases. In each instance, the particular defendant was a relative latecomer to the area, having acquired his assignment after oil had been produced therefrom for many years. It appears quite clear from the record that much of the equipment upon the respective leases was old and had likely reached the end of its productive life. Such equipment was, however, capable of producing oil and was actually being so used at the time of the commencement of the litigation.

There was no joint or concert of action between any of the several defendants; instead, each was operating completely independent of the other upon his own particular area of the vast ranch of the plaintiff, in some instances from five to twenty miles away from each other.

Although plaintiff's lands originally encompassed approximately 144,000 acres, by the terms of a comprehensive agreement executed in 1965, plaintiff and Humble Oil & Refining Co. (now Exxon Corp.) partitioned the lands and minerals. It is sufficient to state at this point that plaintiff received the south 100,000 acres as its portion of the whole ranch with Humble receiving the north 44,000 acres. Each of

---

1. The order followed, precisely, the prayer for the temporary injunctive relief. See fn. 5, infra.

2. Our record is much more complete than that considered in *Speedman*; consequently, we are able to reach and determine some issues which could not be determined there. For instance, with a complete record available, we entered an order the day after submission of the cause, increasing the amount of the injunction bond from $5,000 to $100,000.

the partitioning owners received numerous surveys which are described in our record as being "minerally classified." See Tex. Rev.Civ.Stat.Ann. art. 5368 (1962). We are not here concerned with the intricate details of the transaction between Humble and plaintiff.

After plaintiff's sole stockholder (Clinton Manges) obtained complete stock ownership of the plaintiff corporation, the present suit was instituted. Plaintiff's pleadings, very general in nature, were met with numerous special exceptions urged by the several defendants but all were overruled. We note, in passing, that no specific act or omission was charged against any particular defendant—the allegations being of a "shotgun" nature applicable to all alike.

After an extensive hearing over a period of several months, the trial court granted the temporary injunction sought by plaintiff, denied all relief sought by defendants, and refused to fix the amount of a supersedeas bond. Each defendant has filed his separate appeal and brief.

The appeal from the order granting the temporary injunction, dated January 18, 1973, has been delayed because of the inability of the court reporter to prepare and file the statement of facts. It was not until June 14, 1974 that the record was completed.[3] Within six months thereafter, the parties had briefed and argued the case and it was ready for determination by December 12, 1974.

*Opinion*

"Plaintiff's suit seeks cancellation of [the] oil and gas lease[s] which [have] been assigned to defendants by the original lessee[s], and recovery of $2,000,000 actual damages and a like amount as exemplary damages because of alleged permanent injury to the surface of plaintiff's land as a result of defendants' operations."[4]

■ The dominant purpose of plaintiff's *suit was to secure a forfeiture of the oil and gas leases held by the defendants because of the alleged pollution of its lands, and to recover the damages caused to such lands.[5]* The injunction which was granted was, consequently, an ancillary injunction. 6 Texas Practice (2d ed. 1973) § 156, at 195; Houston Oil Co. of Texas v. Village Mills Co., 109 Tex. 169, 202 S.W. 725, 226 S.W. 1075 (1918); City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973 (1931); City of Beaumont v. West, 484 S.

---

3. Delay over such a protracted period frustrates the administration of justice and must be eliminated. This is particularly true when the appeal is from an order granting a temporary injunction—a 20-day appeal under Tex. Rev.Civ.Stat.Ann. art. 4662 (1952). See also, Modine Manufacturing Co. v. North East Independent School Dist., 489 S.W.2d 458 (Tex.Civ.App.—San Antonio 1972, orig. proceedings).

4. *Speedman Case*, supra (504 S.W.2d at 925). The remaining portion of the paragraph from which the above quotation is taken is likewise applicable to the case now under consideration.

5. Plaintiff summarizes the thrust of its pleading in this manner: "The complaint [alleged in its petition] was in substance that Appellants [defendants] had allowed pollutants to escape from their production facilities into Appellee's [plaintiff's] pastures."

We quote the prayer of plaintiff's trial pleading: "Wherefore, premises considered, Plaintiff prays that the Defendants * * * be temporarily enjoined during the pendency of the main cause herein from pumping, flowing, or producing any petroleum, oil, gas, or any combination thereof from leases located on property which Plaintiff owns in Duval or Webb County, Texas, and that upon final trial hereof, all Defendants be permanently enjoined from so acting; that Plaintiff have judgment against all Defendants, jointly and severally [for its actual and exemplary damages] * * * that the Court further declare and determine that the leases under which Defendants claim be cancelled and terminated and that any and all rights to the said properties be declared forfeited and that the mineral estates formerly claimed by Defendants revert to Plaintiff; that Plaintiff recover its costs and have such other and further relief at law or in equity to which it may be justly entitled."

W.2d 789 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.).

In our review of the order granting the temporary injunction we are governed by a series of rules which have been stated, re-stated, affirmed, and reaffirmed by our Supreme Court upon several occasions. We do not find it necessary to again state the rules. See, e.g., Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 552 (1953); Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517, 519 (1961); Sun Oil Company v. Whitaker, 424 S.W.2d 216, 218 (Tex.1968); Millwrights Loc. Union No. 2484 v. Rust Engineering Co., 433 S.W.2d 683, 686 (Tex. 1968). We are of the view that it would be to pile Pelion upon Ossa for us to attempt further elucidation of these rules.

■ In its pleading for injunctive relief, plaintiff sought only a decree which unconditionally prohibited defendants from producing oil from the land covered by their valid leases [fn. 5, supra]; plaintiff did not seek to enjoin pollution. It is clearly established in this state that, before a court of equity may grant injunctive relief, the applicant must specify the precise relief sought and the court is without jurisdiction to grant relief beyond or in addition to that particularly specified. Fletcher v. King, 75 S.W.2d 980, 982 (Tex.Civ. App.—Amarillo 1934, writ ref'd); Lone Star Gas Co. v. Childress, 187 S.W.2d 936, 939 (Tex.Civ.App.—Waco 1945, no writ); Davies v. Unauthorized Pr. Com. of St. Bar of Texas, 431 S.W.2d 590, 594 (Tex. Civ.App.—Tyler 1968, writ ref'd n. r. e.).

■ We must bear another equally important rule in mind when we review the particular order under consideration. It was stated in Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871, 875 (1948), in this language: "[T]he decree must not be so broad as to enjoin a defendant from activities which are lawful and a proper exercise of his rights. 43 C.J.S., Injunctions, § 211." See also, Scoggins v. Cameron County Water Imp. Dist. No. 15, 264 S.W. 2d 169, 173 (Tex.Civ.App.—Austin 1954, writ ref'd).

■ Another rule which we must honor is that stated in Sun Oil Company v. Whitaker, supra: "[I]n no event should the writ issue for the protection of an applicant who does not show a probable right on final trial to a permanent injunction." (424 S.W.2d at 218) See also, Millwrights Loc. Union No. 2484 v. Rust Engineering Co., supra.

We now face defendants' contention that the trial court abused its discretion in enjoining all *production* and not just *pollution*. Plaintiff, understandably, relies heavily upon the *Speedman Case,* supra. In their appeal, the *Speedman* defendants challenged the temporary injunction on the ground that "the interlocutory injunction alters, rather than preserves, the status quo." In stating the contention of the *Speedman* appellants, Justice Cardena used these words:

"In presenting this ground for dissolution of the injunction, defendants maintain that the status quo to be preserved consists of the method in which they were operating prior to the institution of plaintiff's suit." (504 S.W.2d at 928)

In our case, defendants do not contend that they have a vested right to continue polluting the surface of plaintiff's lands. As one group of defendants [Chiles-Arnold] say:

"Assuming, arguendo, that Appellants were 'polluting' the surface of the lands, the Appellants *do not* here contend that they have the right to commit wrongful pollution. *But they do contend that they have the vested legal right to continue to produce oil under their leases.*" (emphasis in text)

We now turn to a consideration of the correlative rights of the surface owner vis a vis those of the owners of the mineral estate. These rights were set out with ad-

mirable simplicity by Justice Steakley in Getty Oil Company v. Jones, 470 S.W.2d 618, 621, 53 A.L.R.3d 1 (Tex.1971):

> "It is well settled that the oil and gas estate is the dominant estate in the sense that use of as much of the premises as is reasonably necessary to produce and remove the minerals is held to be impliedly authorized by the lease; but that the rights implied in favor of the mineral estate are to be exercised with due regard for the rights of the owner of the servient estate." (citations omitted)

It is true, as pointed out by Justice Daniel in his dissent in Sun Oil Company v. Whitaker, 483 S.W.2d 808, 817 (Tex. 1972): "A definite trend toward conciliation of conflicts and accommodation of both estates is evident in our court decisions and in the conduct between the lessees and surface owners." Several well-reasoned opinions of our Supreme Court and the views of many legal scholars, cited by Justice Daniel, support the statement. See also, D. Ferguson and I. Jones, II, "A New Approach to the Use of the Surface Estate by a Lessee Under an Oil and Gas Lease," 13 S.Tex.L.J. 269, 289 (1971); Note, 50 Texas L.Rev. 806 (1972). However, no case cited to us (except *Speedman,* supra) has sanctioned a complete prohibition of oil production from a valid lease because of an alleged conflict between the competing rights of the surface owner and the mineral lessee.

■■ Under the modern concept of the correlative rights of the surface owner and the mineral lessee, the rights of the latter to the use of the surface is not absolute or unfettered. Instead, the mineral lessee is limited "to uses which are reasonably necessary and which are made with due regard for the rights of the surface owner." Dissenting opinion in Sun Oil Company v. Whitaker, supra (483 S.W.2d at 821).[6] In-

deed, the author of the annotation reported in 53 A.L.R.3d 16, 88 (1973), which is appended to Getty v. Jones, supra, cites many authorities supporting this statement:

> "The courts and the text and law review commentators have repeatedly stated that—whether or not expressly set forth—an oil and gas lease carries with it a right to reasonably necessary possession and use of the surface of the leasehold."

But, as was said in Humble Oil & Refining Company v. Williams, 420 S.W.2d 133, 134 (Tex.1967):

> "A person who seeks to recover from the lessee for damages to the surface has the burden of alleging and proving either specific acts of negligence or that more of the land was used by the lessee than was reasonably necessary."

See also, Amerada-Hess Corp. v. Iparrea, 495 S.W.2d 60, 61 (Tex.Civ.App.—El Paso 1973, writ ref'd n. r. e.).

The base leases, under which defendants were producing are not of the more modern vintage. Rather, they are extremely broad. The defendant Arnold, for instance, holds under a base lease dated March 3, 1925, from plaintiff to Vacuum Oil Company, now Mobil. The lands were leased:

> " . . . for the sole and only purpose of operating for and producing oil, gas, casinghead gas, casinghead gasoline, coal, sulphur and all other minerals thereon and therefrom together with rights-of-way and easements for pipe lines, telephone and telegraph lines, tanks, power houses, stations, gasoline plants, treating plants and fuxtures for producing, mining, treating and caring for such products, and housing and boarding employees, and for the construction and maintenance of roads and

---

6. This was language first used by Chief Justice Calvert in the original opinion in *Whitaker,* supra, which was withdrawn upon motion for rehearing. 15 Tex.Sup.Ct.J. 60, 62 (Oct. 27, 1971).

any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said lease for oil, gas, casinghead gas, casinghead gasoline, coal, sulphur and other minerals with the right for such purposes to the free use of gas, oil and water produced on said land except water from wells or tanks of lessor. The easements herein granted shall apply to the land covered by this lease and any other land owned by lessor in said Duval and Webb Counties, Texas."

Although the other base leases under which other defendants were operating are not identical to that quoted, each base lease confers broad rights of use of the surface estate upon the lessees and assignees thereof.

■ We accept one of the premises of plaintiff, based as it is upon the language found in Acker v. Guinn, 464 S.W.2d 348, 352 (Tex.1971): The mineral estate is dominant "and its owner is entitled to make reasonable use of the surface for the production of his minerals. It is not ordinarily contemplated, however, that the utility of the surface for agricultural or grazing purposes will be destroyed or substantially impaired." The lessee is liable in damages for permanent injury done to the surface of the land caused by his negligent acts. General Crude Oil Company v. Aiken, 162 Tex. 104, 344 S.W.2d 668 (1961); Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (1961); Texaco, Inc. v. Faris, 413 S.W.2d 147, 149 (Tex.Civ.App.—El Paso 1967, writ ref'd n. r. e.); W. Browder,

"The Dominant Oil and Gas Estate—Master or Servant of the Servient Estate," 17 SW.L.J. 25, 49 (1963).

But, plaintiff's damage suit is yet to be tried and is not before us in any form. It sought and obtained an injunction which prohibited production of oil—not prevention of pollution.[7]

The Court's order enjoining further production from each defendant's lease was based, as noted above, upon general pleadings applicable to all alike. As might be expected, the testimony was not identical as to each of the defendant's activities. We need comment upon the activities of only two of the defendants to illustrate the divergence.

Defendant Winslow, readily admitting that the equipment on his leases was old, faulty, and in need of replacement when he acquired the leases, told of his efforts to improve the operating efficiency thereof.[8] Winslow had apparently made minimum efforts to upgrade the equipment before the filing of the application for a temporary injunction by plaintiff. Thereafter, he adopted a "wait and see" approach to the cleanup campaign.[9] Although he had only about $4500 available for such purpose, he insisted that his backers would furnish adequate funds to complete the operation.

Defendant Beissner, on the other hand, established by plaintiff's witness Robertson that the vegetation upon his leases was in the "[b]est shape I have ever seen it." *After* being served with plaintiff's application for an injunction, Beissner intensified

---

7. Plaintiff is mistaken when it says in its brief (p. 41) : "The relief requested was the abatement of the continued pollution of Appellee's surface by these Appellants." See fn. 5, supra.

8. According to Railroad Commission Inspector Crisp, the leases acquired by Winslow "probably would not have been the worst in Duval County but they were one of the worst . . . he had done some work on his [leases] . . . but he still had a lot more work to do on that."

9. Upon cross-examination Winslow testified : "Well, we got started into all of these things [cleanup operation] and frankly we should pull [plug] some wells but I got to thinking about that and I thought well, I am a fool if I keep this up. I am sitting down here in this courthouse week after week and someone is trying to shut me in and I think if I was smart that I would wait and see what happens."

his efforts in his extensive cleanup campaign. Inspector Crisp of the Railroad Commission inspected the leases twice while the hearing was in progress, once in November and again in December. Crisp found no evidence of any violation of any Commission order or regulation on the Beissner leases. Further, from his inspections of the Beissner leases, he found that Beissner's "operations are the usual and customary way of operating in the oil field." No representative of plaintiff had ever complained to him of the conditions on the Beissner leases.

Frank S. Warner, a professional petroleum engineer, a consultant "of all phases of production and the sale of petroleum and gas," and an independent oil operator, testified to his inspection of the Beissner leases. It was Warner's opinion that Beissner's operation was a "very normal operation" and that his "use of the surface was reasonably necessary for the production of—and storage of oil and gas."

His three inspections, made during the course of the hearing on the application for the temporary injunction, found Beissner's equipment to be adequate and that the repairs had been made correctly. In short, although there may have been deficiencies in Beissner's operations when suit was filed, his production equipment and methods were conforming to the usual and customary operational standards at the time of the hearing.

■ Thus, under broad conclusory allegations of a very general nature applicable to all defendants alike (when the proof showed a lack of concert of similarity of action),[10] the trial court enjoined all defendants in a common order prohibiting them from the further exercise of their lawful right to produce oil. This was done upon a record which did not support the broad order which was entered; upon a record which contained neither pleading nor proof of the lack of an adequate remedy at law;[11] where there was no allegation of insolvency or proof of inability to respond in damages;[12] done without giving any consideration to the doctrine of clean hands,[13] laches,[14] balancing of equities,[15] or a showing that a less drastic injunctive order (i. e. one forbidding further pollution) was not adequate to protect plaintiff's alleged rights.

From the foregoing résumé of the case, it is apparent that we are of the opinion that the trial court abused its discretion in enjoining the defendants from production of oil from the leased premises. The decree of the trial court enjoined the defendants from activities which were lawful and within a proper legal exercise of their rights—the production of oil. In granting the injunction, the trial court abused its discretion and violated the rules set out in Villalobos v. Holguin, supra (208 S.W.2d at 875), and Scoggins v. Cameron County Water Imp. Dist. No. 25, supra (264 S.W.2d at 173). In order that our action may be tested under the appropriate standards, we sustain the following points of error: Winslow-Duval, Point 10; Chiles-Arnold,

---

10. "The petition must state all, and negative all, which is necessary to establish a right." Wilson v. Whitaker, 353 S.W.2d 945, 947 (Tex.Civ.App.—Houston 1962, no writ), and cases therein cited.

11. Hill v. Brown, 237 S.W. 252, 255 (Tex. Comm'n App.1922, jdgmt adopted) ; Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615, 619 (1950).

12. Hancock v. Bradshaw, 350 S.W.2d 955, 957 (Tex.Civ.App.—Amarillo 1961, no writ) : "There is nothing in this record to show the parties responsible for appellee's damages, if any, are not able to respond in damages. The granting of an injunction in the face of an adequate remedy at law is an erroneous abuse of the court's discretionary powers."

13. Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 410 (1960) ; Vaughan v. Kizer, 400 S.W.2d 586, 590 (Tex.Civ.App.— Waco 1966, writ ref'd n. r. e.).

14. Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167, 170 (1943).

15. Storey v. Central Hide & Rendering Co., supra, fn. 11.

Point 7; Beissner, Point 4; Lynd-Sparks, Point 5.

While we have dissolved the temporary injunction in its entirety upon the basis of the present record before us, there is a *possibility* that plaintiff may seek another "temporary" injunction to prevent pollution of its surface estate. Therefore, we express our views upon several other facets of the matter which should be considered in such eventuality.

### 1a. *The Lynd-Sparks Lease*

According to the unchallenged statements in the brief of these defendants, their activities were confined to producing oil from wells upon the J. Poitevent Survey, Section 363, in Duval County. According to the uncontradicted evidence (and plaintiff's admissions upon oral submission), this was on land which Humble owned with plaintiff having only a grazing lease thereon. Moreover, our record shows that Humble had filed a suit in ejectment in the Federal Court in Corpus Christi against plaintiff to force the removal of its cattle from this particular survey since plaintiff's lease thereon had expired before entry of the order granting the injunction.

Since plaintiff has not denied the accuracy of the statements made by Lynd-Sparks in their brief, we are authorized to accept such statements as correct. Texas Rules of Civil Procedure, rule 419; Crawford v. Modos, 465 S.W.2d 220, 222 (Tex.Civ.App.—Beaumont 1971, writ dism'd). Having a tremendous record, we accept the said defendants' statements as being correct.

Thus, plaintiff is merely an "adjacent land owner" as mentioned in Tex. Rev.Civ.Stat.Ann. art. 4644 (1940). In emphatic language, the cited statute forbids the issuance of an injunction prohibiting sub-surface drilling or mining operations on the application of an adjacent land owner claiming injury to his surface or improvements unless the party alleged to be committing the wrongful act "is shown to be unable to respond in damages for such injury as may result from such drilling or mining operations."

As was said in Town of Refugio v. Strauch, 29 S.W.2d 1041, 1045 (Tex. Comm'n App.1930): "The failure to allege the insolvency of the alleged wrongdoer raises the presumption that no such allegation could have been truthfully made, from which it is apparent that the defendants in error had an adequate remedy at law in a suit for damages." See also, Magnolia Petroleum Co. v. McClendon, 123 Tex. 10, 65 S.W.2d 484, 485 (1933).

Thus, we hold that "the issuance of the injunction in this case [against Lynd-Sparks] violates this provision of the law and regardless of the rights of the parties finally to be adjudicated, we hold that the writ was improvidently issued at the time it was, and under the conditions then existing." Town of Refugio v. Strauch, supra.

### 1b. *The Chiles Lease*

The above holding with respect to the Lynd-Sparks lease is also applicable to the "B" lease of Chiles, Section 204 of the J. Poitevent Survey in Duval County. This lease was on land owned by Humble which was not mineral classified land. Plaintiff's only interest was a grazing lease thereon which has subsequently expired.

### 2. *Amended Pleadings*

As mentioned earlier, plaintiff's pleadings were very general in nature and did not charge any particular defendant with any specific act or omission upon any particular date. While we have not passed directly upon defendants' challenges thereto—such action not being required under our view of the case—it is well to point out to the parties that pleadings in suits seeking injunctions are to be couched in clear language, definite and certain in

meaning, and conclusions must not be relied upon. 6 Texas Practice (2d ed. 1973) § 172, at 201. Plaintiff's reliance upon this court's opinion in McCamey v. Kinnear, 484 S.W.2d 150 (Tex.Civ.App.— Beaumont 1972, writ ref'd n. r. e.), is misplaced. *McCamey* was an ordinary civil suit with no injunctive relief being sought; and, moreover, it was a suit in which adequate time had elapsed for full discovery. In most injunction cases, time is of the essence and discovery is seldom available.

### 3. *Necessary Parties*

■ In the posture in which this case reached us, we were not impressed with defendants' claim of non-joinder of necessary parties as a condition precedent to the issuance of the temporary injunction. In the ordinary case, such joinder is not required for, as stated in Littlejohn v. Finder, 348 S.W.2d 237, 239 (Tex.Civ.App.— San Antonio 1961, no writ):

"The matter of parties upon the trial of the merits will present a serious matter, but this proceeding concerns temporary orders. *One with rights which need preservation pending final trial, need not join all necessary parties before he can obtain interim orders.* If that were the rule, his rights might be lost before the parties could be found and joined." (emphasis supplied)

See also, Thomas v. Allis, 389 S.W.2d 109, 111 (Tex.Civ.App.—Tyler 1965, no writ).

But, these defendants have been "temporarily" enjoined for two years during which time, presumably, plaintiff has been searching diligently for the necessary and proper parties who must be joined before a final trial on the merits. See Cooper v. Texas Gulf Industries, Inc., 513 S.W.2d 200, 203 (Tex.1974), for a discussion of the rule with reference to joinder of parties.

### 4. *Inadequacy of the Temporary Injunction*

The words of the late Justice Norvell, in Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417, 421–422 (1959), express our view on the subject:

"Deliberate action is essential for the accurate determination of legal rights and upon occasion this can be secured only by issuing a temporary decree protecting a status quo. Ordinarily, the hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits. Generally the most expeditious way of obviating the hardship and discomforture of an unfavorable preliminary order is to try the case on its merits and thus secure a hearing wherein the case may be fully developed and the courts, both trial and appellate, may render judgments finally disposing of controversies."

See also, Briscoe Ranches, Inc. v. Eagle Pass Ind. Sch. Dist., 439 S.W.2d 118, 120 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.). The observations in this section of the opinion apply with equal vigor to all parties to the suit.

### 5. *Other Points of Error*

We do not reach and consequently do not determine the merit, or lack thereof, of any other points in the several briefs.

### 6. *Conclusion*

The temporary injunction order by the trial court which prohibited the production of oil by the defendants from their several leases is set aside, vacated, and dissolved. All costs are taxed against the plaintiff.

Reversed and temporary injunction dissolved.