**CRAWFORD ENERGY, INC., Appellant,**

**v.**

**TEXAS INDUSTRIES, INC., Appellee.**

**No. 18941.**

Court of Civil Appeals of Texas, Dallas.

July 22, 1976.

Rehearing Denied Aug. 19, 1976.

AKIN, Justice.

This is an appeal by Crawford Energy, Inc. from a temporary injunction granted by the trial court to Texas Industries, Inc. (hereinafter referred to as TXI) prohibiting Crawford from continuing oil and gas drilling on a tract of land in which TXI was quarrying rock. The defendant Crawford had the right to the oil, gas and minerals in the same tract of land in which TXI had the right to quarry rock. Two principal questions are presented by this appeal: (1) Has TXI established an immediate probable injury justifying injunctive relief? (2) if not, is TXI entitled to a temporary injunction to prevent the breach of a negative covenant? Because TXI has failed in its burden of establishing an immediate probable injury, and, because it has also failed to prove a distinct and substantial breach of the negative covenant, we hold that the trial court abused its discretion. Consequently, we reverse the order of the trial court and dissolve the injunction.

TXI's right to quarry rock and stone was obtained by lease in 1946, and quarrying commenced in 1952. In that conveyance, the owners of the fee granted TXI "the full and exclusive right to take and remove from said  .   .   . leased premises any and all rock and stone which may be situated thereon  .   .   . ." However, the fee owners expressly reserved in that instrument certain rights as follows:

> The right to use said lands and premises for grazing and any other purpose *not inconsistent with the rights herein granted to said lease* and especially  .   .   . the right to drill  .   .   . wells for oil and gas on said lands, provided such wells shall be so located  .   .   . as not to interfere with the  .   .   . operations of  .   .   . lessee and his successors and assigns under said lease. But, it is expressly agreed and understood that no use of said lands by the lessor shall *in any manner interfere with the rights herein granted to the lessee,* his successors and assigns. [Emphasis added.]

Thereafter, on November 12, 1975, Crawford obtained from the fee owners a two-year lease of the oil, gas and minerals. Drilling commenced in December 1975. Because Crawford and TXI failed to agree on locations for drilling sites, TXI obtained a temporary restraining order against Crawford which, after hearing, became a temporary injunction. This injunction extended to all drilling operations except well number two, which by agreement of the parties was expressly excluded. Since well number one is the only other well being drilled by Crawford, it is the only current activity affected by the injunction.

Before we reach the determinative points of this appeal, we must first address Crawford's argument that the temporary injunction was issued in contravention of Tex.Rev.Civ.Stat.Ann. art. 4644 (Vernon 1952) which provides:

> No injunction or temporary restraining order shall ever be issued prohibiting subsurface drilling or mining operations on the application of an *adjacent land owner*

claiming injury to his surface or improvements or loss of or injury to the minerals thereunder, unless the party against whom drilling or mining operations is alleged as a wrongful act is shown to be unable to respond in damages for such injury . . . . [Emphasis added.]

Crawford argues that since TXI has failed to plead or prove that Crawford is unable to respond in damages, it is, therefore, prohibited from obtaining injunctive relief pursuant to this statute. In support of its position Crawford cites *Town of Refugio v. Strauch*, 29 S.W.2d 1041 (Tex. Comm'n App. 1930, judgmt adptd); *Magnolia Petroleum Co. v. McClendon*, 123 Tex. 10, 65 S.W.2d 484 (1933); *Gulf Production Co. v. Railroad Commission of Texas*, 84 S.W.2d 359 (Tex.Civ.App.—Austin 1935, no writ); and *Winslow v. Duval County Ranch Co.*, 519 S.W.2d 217 (Tex.Civ.App.—Beaumont 1975, no writ).

TXI argues, however, that Crawford's reliance on art. 4644, and those cases interpreting it, is inappropriate because each of those cases concern disputes between owners of *adjacent lands* or of leasehold estates in adjacent lands. We agree. The instant controversy concerns the dispute between respective leasehold rights *in the same property*. In *Hastings Oil Co. v. Texas Co.*, 149 Tex. 416, 234 S.W.2d 389 (1950), the supreme court held that art. 4644 was passed to insure that one who drilled a well on his own premises and produced oil that migrated from neighboring land could not be enjoined from such production even though he was draining oil from adjacent land. The court concluded that "the article was intended to refer to one taking oil from *his own land*, not to one taking oil from the land of the adjoining owner by means of a deviated well." Likewise, the Texarkana Court of Civil Appeals held in *Baton v. Key Production Co.*, 315 S.W.2d 59 (Tex.Civ.App.—Texarkana 1958, writ ref'd n.r.e.), that a suit involving adjacent landowners only was within the ambit of art. 4644.

Crawford contends, however, that this case is controlled by *Winslow v. Duval County Ranch Co.*, 519 S.W.2d 217 (Tex.Civ.

App.—Beaumont 1975, no writ). In that case, one of the plaintiffs held the grazing rights of the surface and the mineral estate was owned by the defendant. The court held the plaintiff to be an adjacent landowner and, therefore, required him to plead the insolvency of the defendant in order to obtain injunctive relief pursuant to art. 4644. Consequently, Crawford argues that the *Winslow* court extended the definition of "adjacent" landowners to include the surface owner and the mineral feeholder of the same tract. We cannot agree. The court in *Winslow* noted that although the original tract encompassed 144,000 acres originally, in 1965 by agreement, plaintiff and Exxon Corporation partitioned the land and minerals with plaintiff receiving the south 100,000 acres and Exxon receiving the north 44,000 acres, including the tract on which one of the wells was drilled. With respect to that tract, the court observed that plaintiff had formerly held a grazing lease, but since that lease had expired, plaintiff was merely an "adjacent landowner" within art. 4644. *Id.* at 225. Consequently, we do not read *Winslow* to extend the definition of adjacent landowners to include parties with leasehold interests in and to the same tract of land.

*Temporary Injunction*

In temporary injunction cases, the issue presented on appeal is whether the trial court abused its discretion in issuing or refusing the writ. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *Electronic Data Systems Corp. v. Powell*, 524 S.W.2d 393, 395 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). A temporary injunction will be properly issued where the applicant shows a probable right and a probable injury. *Transport Co. of Texas v. Robertson Transports, Inc., supra* at 552. The applicant is not required to establish that it will finally prevail in the litigation. *Id.* at 552. The probable right upon which TXI relied is that granted by its lease agreement. In that agreement the fee owner's right to re-lease the premises was limited so that TXI's quarrying right would be protected.

That agreement provided "But it is expressly agreed and understood that no use of said lands by the lessor shall *in any manner interfere with the rights herein granted to the lessee . . . .*" [Emphasis added.] Since this provision in the lease establishes TXI's probable right subject to protection, the critical question is whether TXI has met the second prerequisite of their burden of establishing a probable injury if the temporary injunction is not granted. The injury to be prevented by the granting of a temporary injunction is an immediate injury and not merely an injury that may arise at some point in the future. *E. g., Dallas Joint Stock Land Bank v. Davis*, 73 S.W.2d 989 (Tex.Civ.App.—Waco 1934, no writ).

The trial court found: (1) Crawford was not entitled to conduct oil and gas operations on the premises without either TXI's approval or prior judicial determination of the propriety of the operation; (2) TXI's blasting operations in its quarrys may result in injuries to persons and property at Crawford's well site; (3) if Crawford discovered either oil or gas at some time in the future, TXI's blasting may result in injury to the Crawford well site; (4) if Crawford struck oil or gas in the future, Crawford's operations may pollute TXI's rock deposits; (5) if Crawford's operations become successful, TXI may be prevented or delayed in quarrying some of the rock deposits in the immediate vicinity of Crawford's well; (6) and because of the above reasons, TXI was entitled to have Crawford enjoined from conducting operations without TXI's consent.

■ With respect to these findings, the only present danger revealed by the evidence is the potential injury to persons and property in the vicinity of Crawford's well. This danger, however, is no greater to Crawford personnel than to TXI employees because TXI makes sure that the entire area is cleared before blasting. However, a TXI witness stated there may be a potential injury of lost time, and, consequently, lost profits due to the clearing of people from an area before blasting. These potential injuries are not grounds, however, for the granting of a temporary injunction. Mr. Virgil Sewell, TXI's vice president of manufacturing, testified that TXI would suffer no direct injury even if TXI was blasting within 400 feet of Crawford's well *unless it was a producer.* According to the evidence, Crawford's well is 2,000 feet from TXI's quarry and its quarrying operations are moving toward Crawford's well at the rate of 200 feet per year. Consequently, it will be approximately ten years before TXI's quarrying operations reach the location of Crawford's well. This is so even though one of TXI's witnesses estimated that its quarrying operations would not reach Crawford's well until at least five years hence. Even the trial court stated: "I don't see any big urgency here." We conclude, therefore, that TXI failed to show any immediate probable injury. This precludes its right to a temporary injunction pending trial on the merits. Moreover, the findings of the trial court pertaining to the possible pollution of the rocks and possible damage to TXI by being unable to quarry the rock in the immediate vicinity of Crawford's well are likewise not *immediate probable injuries* justifying a temporary injunction to protect its interest. We conclude, therefore, that the injunction was improvidently granted.

### Negative Covenant

■ TXI also argues that even if it was not entitled to a temporary injunction to preserve the status quo, it nevertheless was entitled to an injunction for the enforcement of the negative covenant running with the land. In this regard, TXI contends that in order to satisfy the requirements of this exception to the general requirements for injunctive relief, it need only show a probability that a distinct breach of the negative covenant will occur by the reason of a producing well on the property. We cannot agree. In *Protestant Episcopal Church Council v. McKinney*, 339 S.W.2d 400 (Tex.Civ.App.—Eastland 1960, writ ref'd), the court stated that a covenant restricting the use of land may be enforced by injunction "where a *distinct or substantial breach* is shown, without regard to the

amount of damages caused by the breach . . . ." [Emphasis added.] *Id.* at 403. It was, therefore, incumbent upon TXI to show a *distinct and substantial breach* of the restrictive covenant. Again, TXI relies on that portion of the agreement providing that Crawford could not in any manner interfere with TXI's use of the property. We do not read that language to give TXI the absolute power to determine where Crawford may drill an oil or gas well so as to require TXI's consent. Instead, we construe that provision to require TXI to show an interference with its quarrying operation that amounts to a *substantial and unreasonable breach* of the covenant. To construe the language as TXI would have us do would render the reservation of the oil and gas rights meaningless. Indeed, the extension of TXI's contention to its ultimate conclusion could preclude any drilling. In this respect, construing the evidence most favorably to the trial court's order, the evidence at best shows only a potential interference with TXI's rights in the future. Since TXI has failed to show any present substantial interference with its operations, it failed to meet the requirements of the exception to show a distinct and substantial breach of the negative covenant. Having failed so to do, it was not entitled to an injunction.

 In our view, in a case such as this, the trial court should not proceed into a temporary-injunction hearing unless the rights of one of the parties need preservation pending final trial. Instead, the trial court should advance the trial on the merits so as to eliminate two hearings as well as two appeals. This is particularly true because virtually the same evidence adduced at the temporary-injunction hearing will be required on trial on the merits. Ordinarily, justice will be served by eliminating the temporary-injunction hearing. Our views are best expressed in the words of the late Justice Norvell in *Southwest Weather Research, Inc. v. Jones*, 160 Tex. 104, 327 S.W.2d 417, 421–22 (1959), as follows: lows:

> Deliberate action is essential for the accurate determination of legal rights and

*upon occasion* this can be secured only by issuing a temporary decree protecting a status quo. Ordinarily, the hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits. Generally *the most expeditious way* of obviating the hardship and discomforture of an unfavorable preliminary order *is to try the case on its merits* and thus secure a hearing wherein the case may be fully developed and the courts, both trial and appellate, may render judgments finally disposing of controversies. [Emphasis added.]

In view of our disposition of these points, we need not address Crawford's other contentions. The order of the trial court is reversed and the injunction dissolved.