The **TARRANT COUNTY, TEXAS COMMISSIONERS COURT; County Judge Roy English; County Commissioner O.L. Watson; County Commissioner J.D. Johnson; County Commissioner Bob Hampton; County Commissioner Dionne Bagsby; and Sheriff Don Carpenter, Appellants,**

v.

**Billy MARKHAM, Appellee.**

**No. 2–89–097–CV.**

Court of Appeals of Texas, Fort Worth.

Sept. 28, 1989.

Rehearing Denied Nov. 29, 1989.

Before HILL, FARRIS and KELTNER, JJ.

## OPINION

KELTNER, Justice.

The issue in this appeal from the granting of a temporary injunction is whether the plaintiff, Billy Markham, has standing, individually or as class representative, to complain of the current and future condition of the Tarrant County Jail. We hold that Markham does not have standing to seek injunctive relief because at the time of filing of the suit he was not an inmate or otherwise affected by the conditions in the Tarrant County Jail. As a result, we reverse the trial court's order granting the temporary injunction and certifying the class with Markham as the class representative.

This suit arises out of a series of unfortunate incidents in the Tarrant County Jail. Markham is not a stranger to Texas jails.[1] Nonetheless, on the occasion in question, he was incarcerated in the Tarrant County Jail, not as a convicted felon, but as a citizen awaiting trial. While he was incarcerated, he was severely beaten several times, forced to perform oral sex on eight cellmates, and later sodomized by some of his cellmates. The undisputed evidence demonstrates that the abuse occurred within the cell block in clear view of other inmates. Nonetheless, the attack was not detected by the jailers. After this abuse was discovered, the cellmates were prosecuted and convicted of assault.

Markham brought suit alleging the jail was unsafe because it was overcrowded and violated state statutes and regulations promulgated by the Texas Commission on Jail Standards. TEX.LOC.GOV'T CODE ANN. sec. 351.002 (Vernon 1988); 37 TEX. ADMIN.CODE Part IV (West 1989). These statutes and regulations deal with such items as inmate population, guard to inmate ratio, and jail space allocated to each inmate.

Tim Curry, Dist. Atty., and Richard Lee Brown and Van Thompson, Jr., Assts., Fort Worth, for appellants.

Brender & Colosi, and Art Brender, Fort Worth, for appellee.

1. The record reflects that Markham has been in jail numerous times, and has served time in the Texas Department of Corrections on three occasions.

Markham also sought the appointment of a receiver of the jail to keep the court informed about the city's and county's compliance with these regulations and statutes.[2] Furthermore, Markham sought certification of the suit as a class action suit pursuant to TEX.R.CIV.P. 42, and sought to be appointed as representative of the class.

In summary, Markham sought damages on his own behalf. Additionally, he sought declaratory judgment, the appointment of a receiver, and injunctive relief on his behalf and on behalf of the class of which he sought to be appointed a representative.

At the time of the filing of the lawsuit, Markham was on parole from the Texas Department of Corrections. He was not an inmate of the Tarrant County Jail, nor under threat of reincarceration except for the possibility that he might be accused of violating the terms of his parole. Nonetheless, he sought a temporary injunction regarding the current and future condition of the Tarrant County Jail, and requested to be designated as a representative of a class which contained all persons presently confined in the Tarrant County Jail.

All the parties admit that the Tarrant County Jail is overcrowded. Much of this blame is due to the failure of the State of Texas to meet its obligations to house inmates who have been committed to the Texas Department of Corrections (T.D.C.) by the order of state courts. *See* TEX. CODE CRIM.PROC.ANN. art. 42.09 (Vernon Supp.1989).

The sad truth is that the State of Texas fails to meet its obligations to incarcerate convicted felons because of the state's settlement agreement in the well-known *Ruiz* case. *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.1982). By its settlement, the State of Texas made several agreements regarding the incarceration of inmates, including an agreement to limit the inmate population incarcerated in T.D.C. In order to meet its

obligations under the *Ruiz* settlement, the state has adopted a policy of refusing to accept inmates from county jails, committed to T.D.C., as is the state's obligation under law.

The unhappy result is that there are two prison systems in Texas. One is operated "on the books" by T.D.C. and appears to meet the state's obligations under *Ruiz*. This prison system is financed by the State of Texas out of the state budget. The second Texas prison system is less visible to the public eye; but it exists in increasingly overcrowded county jails. In this system, inmates who have been committed to T.D.C. by state courts, are forced to languish in jails of the various counties throughout the state, because of the state's failure to accept the inmates committed to T.D.C. As a result, this second system is not financed out of the state's budget. Instead, these inmates committed to the T.D.C. are incarcerated at the cost of the various counties throughout Texas.

These county jails were not designed to house convicted felons who have been committed to T.D.C. for relatively long periods of time. For the most part, these local jails were designed to hold citizens awaiting trial and for those inmates who are incarcerated for short periods of time for misdemeanor offenses. The pressure of overcrowding together with the mixing of convicted felons with county jail populations has created increasingly crowded and dangerous conditions in the county jails throughout Texas.

The facts of this case are a sad example of this overcrowding. The legal capacity of the Tarrant County Jail is 1808 inmates. In the spring of this year, the population of the jail ballooned to over 2500 inmates. Of this number, 1152 were convicted felons who had been committed to T.D.C. by state courts. Simple arithmetic demonstrates that if the State of Texas met its obligations to accept inmates committed to it, the Tarrant County Jail would have more

---

**2.** The plaintiff claimed the City of Fort Worth had contractual arrangements and agreements with Tarrant County regarding housing of city prisoners in the Tarrant County Jail. As a result, he made the city a party to this lawsuit.

During the pendency of this appeal, Markham agreed to the dismissal of the City of Fort Worth from the underlying lawsuit.

than sufficient room for prisoners committed by law to the custody of the Tarrant County Sheriff.

The Tarrant County Commissioners Court and Sheriff have wrestled with the jail overcrowding problem for some time. Several hundred inmates have been farmed out to surrounding municipalities. Additionally, a new minimum facility prison has been opened in two new barracks of the "Cold Springs" unit.

Most importantly, the commissioners have authorized the construction of a new jail. At the writing of this opinion, that facility is almost finished and will provide additional space for inmates. The costs of these efforts are being borne by Tarrant County taxpayers for a function which is properly that of the State of Texas.

We now turn our attention to the trial court's order of which the county complains. The trial court granted a temporary injunction ordering: (1) the commissioners and sheriff to provide and operate the Tarrant County Jail as a "safe and suitable" jail in compliance with Local Government Code, Section 351.001; (2) the sheriff to "safely keep all prisoners committed to the jail"; (3) the sheriff to segregate from the general jail population those inmates who are "prison ready" (committed to T.D.C.); (4) the sheriff to prepare a secure temporary compound which will be "spartan, but humane" for inmates committed to T.D.C.; (5) the sheriff to advise the Governor of Texas that these prisoners committed to the T.D.C. are placed in the compound because the county does not have sufficient space to confine them; (6) the county judge and sheriff to ask the governor to dispatch National Guard troops to guard the segregated prisoners; (7) the county judge and sheriff to proceed under the emergency provisions of the Local Government Code to "employ a sufficient number of guards to insure the safekeeping of the prisoners" if National Guard troops are not called out; (8) the county commissioners and sheriff to provide equipment, services, and personnel as may be needed to build the temporary prisoner compound to house the segregated in-

mates; (9) the sheriff to "requisition in the name, by the authority and on the credit of the State of Texas, such real and personal property, whether public or private, as may be necessary to securely confine" the segregated prisoners; and (10) the sheriff to give a receipt to every person or organization whose property is so taken.

The trial court also appointed a temporary court master who "shall have the authority to superintend the implementation of the temporary injunction."

Additionally, the trial court expanded the class certification requested by Markham to encompass inmates who have been confined in the jail since February 27, 1987, and those persons presently on probation or parole in Tarrant County. The court appointed Markham as representative of this class.

Both the county and city appeal the granting of a temporary injunction, the certification of the class, and the appointment of Markham as representative of the class. The county raises numerous complaints regarding both procedure and substantive law. The county complains that Markham did not have standing, either individually or as a representative of the class, to seek a temporary injunction.

We will not reach the county's allegations of procedural and substantive error. Instead, we hold that Markham did not have standing, either individually or as a representative of a class, to seek a temporary injunction. Additionally, we hold that the trial court erred in enlarging the scope of the class beyond the certification sought in Markham's pleadings.

STANDING

Both the city and county contend that Markham did not have standing to bring the suit for temporary injunction because he was neither incarcerated in the county jail nor affected by the jail's condition at the time of filing the suit. In response, Markham insists that the "relation back doctrine" grants him standing to pursue the case even though the injunction he seeks would not affect him. Markham relies on the United States Supreme Court decision in *So. Pacific Terminal Co. v.*

*I.C.C.*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) to support this contention.

Much of our state's common law regarding standing in class action suits has been taken from our sister courts in the federal system. Both parties rely almost exclusively on this federal common law. As a result, we rely on these federal decisions to reach our conclusion.

■ Standing to bring a lawsuit is one of the two aspects of mootness. The concept of mootness dictates the courts will not hear controversies unless (1) the issues are "live" and (2) the parties have a cognizable interest in the outcome. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479, 490 (1980); *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491, 502 (1969).

It is clear that the controversy over the conditions of the Tarrant County Jail is "live" between the county and members of the class that Markham seeks to represent. Therefore, the first aspect of mootness has been fulfilled.

Instead, we are concerned with the second aspect of mootness—whether Markham had standing to pursue the injunction.

As stated by the United States Supreme Court, the question of standing is "whether the party invoking ... jurisdiction has 'a personal stake in the outcome of the controversy.'" *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947, 962 (1968). Traditionally, courts have held that this "personal stake" must exist at the commencement of the litigation and continue throughout the lawsuit's existence. *U.S. Parole Comm'n*, 445 U.S. at 397, 100 S.Ct. at 1209, 63 L.Ed.2d at 491.

■ However, there is an exception to this general rule. A plaintiff may continue litigation once it is commenced despite the loss of his or her personal stake in the outcome of the litigation if it is demonstrated that the claim will likely arise again and otherwise evade review. *So. Pacific Term. Co. v. I.C.C.*, 219 U.S. at 514–15, 31 S.Ct. at 283, 55 L.Ed. at 316. This exception has been aptly titled the "relation back doctrine."

The doctrine has been used to allow the continuation of a class action suit where the named representative initially had a personal stake in the litigation at the time of filing the suit, but lost the personal stake during the course of the litigation. *U.S. Parole Comm'n*, 445 U.S. at 389, 100 S.Ct. at 1205, 63 L.Ed.2d at 492.

■ We must now apply the "relation back doctrine" to the facts of this case. Markham contends he has standing to seek the injunction because of the doctrine. The city and county disagree and argue that the relation back doctrine applies only when the plaintiff or class representative had a personal stake at the time of filing suit.

Markham insists that the "relation back doctrine" applies even if the plaintiff or class representative did not have standing at the time of filing of the suit. Nonetheless, we have been cited, and can find, no case that applies the doctrine to a situation in which the plaintiff did not have standing at the time the lawsuit commenced. *See U.S. Parole Comm'n.*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *So. Pacific Term. Co. v. I.C.C.*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

We believe the better rule is that the plaintiff must have a personal stake in the litigation at the time of filing suit. In *Roe v. Wade*, the United States Supreme Court was faced with an analogous situation. In that case the parties at the district court included Roe, who was pregnant at the institution of the suit and the Does, a married couple whose separate suit was joined with Roe's. The Does sued because *if* the wife became pregnant in the future, they would seek an abortion. *Roe v. Wade*, 410 U.S. at 128, 93 S.Ct. at 714, 35 L.Ed.2d at 163. The Supreme Court held that while Roe (who was pregnant at the institution of the suit) had standing, the Does (the mar-

ried couple) did not. *Id.* at 128–29, 93 S.Ct. at 714.

As a result, we hold the trial court erred in granting the temporary injunction because Markham does not have standing, either individually or as a representative of a class, to seek the injunction. At time of filing suit, Markham was neither an inmate nor under threat of return to the Tarrant County Jail.

## CLASS SIZE

 Furthermore, we find the trial court erred in certifying a larger class than that requested by Markham in his pleadings.

In his first amended original petition, Markham stated that he brought his cause of action "on his own behalf as well as on behalf of those persons who are incarcerated in the Tarrant County jail...." The district court, however, entered an "Order Certifying Class Action" in which the class was expanded to include not only those persons confined in the Tarrant County Jail, but also those who have been confined in the jail since February 27, 1987 (the day before Markham was arrested for credit card abuse and on violation of his probation), and those persons presently on probation or parole in Tarrant County (a group which would obviously include Markham).

Texas courts have uniformly held that in obtaining injunctive relief, "[an] applicant must specify the precise relief sought and that a court is without jurisdiction to grant relief beyond and in addition to that particularly specified." *Birds Const., Inc. v. Gonzalez,* 595 S.W.2d 926, 929 (Tex.Civ. App.—Corpus Christi 1981, no writ); *see American Precision Vibrator Co. v. Nat'l Air Vibrator Co.,* 764 S.W.2d 274 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Fairfield v. Stonehenge Ass'n Co.,* 678 S.W.2d 608 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Scoggins v. Cameron Co. Water Imp. Dist. No. 15,* 264 S.W.2d 169 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.); *Fletcher v. King,* 75 S.W.2d 980 (Tex.Civ.App.—Amarillo 1934, writ ref'd).

Obviously, the trial court attempted to expand the class to include Markham. However, in doing so, it enlarged the class to encompass plaintiff-members with no justiciable interest in the injunctive relief requested and also granted relief not requested by Markham. For these reasons, the trial court erred in certifying the class.

The city and county have brought other points of error including an allegation that the trial court erred in ordering the sheriff to requisition property in the name and on the credit of the State of Texas. We do not reach these points of error or express any opinion as to their validity.

Instead, we hold the trial court erred in granting the temporary injunction because Markham did not have standing, either individually or as a member of a class, to seek a temporary injunction. Additionally, the trial court did not have jurisdiction to certify a class larger than requested. As a result, we reverse the trial court's order granting the temporary injunction and certifying the class with Markham as the class representative and remand to the trial court for further proceedings.