COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MIKE YARDENI AND MIKE YARDENI FAMILY INVESTMENTS, L.P., | § | No. 08-13-00067-CV |
| | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | 448th Judicial District Court |
| | § | |
| MARIA LOURDES LUNA TORRES AND KIDS VIEW ZARAGOSA CENTER, L.L.C., | § | of El Paso County, Texas |
| | § | (TC# 2012-DCV06385) |
| | § | |
| Appellees. | | |

# **O P I N I O N**

Appellants Mike Yardeni and Mike Yardeni Family Investments, L.P., seek interlocutory review of the trial court's grant of an amended temporary injunction in favor of Maria Lourdes Luna Torres and Kids View Zaragosa Center, L.L.C., Appellees, which prevents Appellants from *inter alia* locking Appellees out of property located on 1777 North Zaragosa Road in El Paso, Texas ("the Zaragosa Property"). This temporary injunction, granted on October 1, 2013, revived a previous injunction that expired by its own terms on August 6, 2013.

On appeal, Appellants argue in two issues that the trial court abused its discretion by granting the temporary injunction order because (1) Appellants lacked standing to obtain the injunction, and (2) the order did not account for the monthly ad valorem tax payments Appellees purportedly owed under their lease. Appellants ask in a third issue that this Court find that

Torres' contractual claim to a 50 percent ownership interest in the Zaragosa Property is barred by the Statute of Frauds. For the following reasons, we affirm the amended temporary injunction order and dismiss Issue Three for presenting a matter that is not justiciable on interlocutory appeal.

## Factual Background

In 2004, Maria Lourdes Luna Torres sought a business loan from Capital Savings Bank in order to expand her child care business and open a daycare center called the Kids View Zaragosa Center on the premises of the Zaragosa Property. Torres approached Capital Savings Bank Board Member Mike Yardeni to assist her in getting the funding. Yardeni told her that if she applied for a loan from Capital Savings Bank, the bank would likely deny the loan because Torres was overextended in her financial commitments. However, Yardeni offered to enter into a business partnership with Torres and said he would personally obtain a loan for her from Citibank. Torres accepted the offer. Under the terms of their verbal partnership agreement, Yardeni would provide the down payment for the building, the equipment, and the mortgage financing. Torres would operate the facility, provide her expertise in running other daycare centers, and hold the necessary licenses to operate the business.

Torres claimed that Yardeni told her he would make the down payment for the Zaragosa Property out of his own personal funds, but that he first needed to provide Citibank with a written lease in order to obtain the loan for the remaining balance. As such, Yardeni executed a lease in 2004 with an entity referred to in the record as "Kids View Seven." There is also apparently a second lease in existence naming "Kids View, Inc." as the tenant. The Court is unable to find a written copy of any leases or the loan applications in the record. Torres testified that she and Kids View Zaragosa Center, L.L.C. are the current tenants in fact and alleges in her brief that Yardeni

executed the leases to Kids View Seven and Kids View, Inc. as a "ruse" to obtain a loan from Citibank that would have otherwise been denied if Yardeni had executed the lease with Kids View Zaragosa Center, L.L.C.   Torres purports that there exists a third lease from 2006, which was executed when she attempted to buy Yardeni out of the partnership, that names Kids View Zaragosa Center, L.L.C., as the current legal tenant.

Eventually, Yardeni obtained financing from Citibank, the Zaragosa Property was purchased, and the Kids View Zaragosa Center opened to the general public.   Following a period of initial business success, Torres and Yardeni sought to expand the Kids View Zaragosa Center by building an annex to the daycare center on an empty portion of the Zaragosa Property.   Yardeni again obtained financing from Citibank to build the annex and business continued.

In 2006, an apparent dispute over ownership of Zaragosa Property arose between Torres and Yardeni.   Torres claims that she and Yardeni entered into an oral agreement that they would each own 50 percent of the Zaragosa Property.   Yardeni apparently disputed that arrangement. Consequently, Torres and Yardeni entered into a written agreement which recited that (1) Yardeni was the sole owner of the Zaragosa Property, and (2) Torres had the option to purchase a 50 percent share in the Zaragosa Property if she paid Yardeni $130,767, the amount he purportedly invested in the property out-of-pocket   The Court again notes that this written agreement is not in the record before us.   In 2008, upon advice of counsel, Torres sought to buy out Yardeni from the partnership, and a new agreement was signed.   Under the 2008 agreement, Torres agreed to sign a $235,000 promissory note to Yardeni in exchange for 50 percent of the Zaragosa Property. Torres did not make all of the scheduled payments under this promissory note.

Eventually, Torres reviewed Yardeni's financial records.   Torres allegedly discovered

3

that Yardeni had not actually paid the down payment for the Zaragosa Property from his own funds. Instead, Yardeni obtained a $650,000 loan in his name from Citibank secured by the Zaragosa Property and used that loan money to purchase the $475,000 Zaragosa Property and some equipment for the daycare center. Torres testified that she had asked Yardeni for an accounting from the first loan in order to determine how the remaining $175,000 in loan money had been spent, but she has not yet received one. She also discovered that at the time the annex had been built, Yardeni obtained a second loan from Citibank in his own name for $253,000, also apparently secured by the Zaragosa Property. Torres determined that the annex's structural improvements had only cost "[a]pproximately $150,000." She claims that she personally contributed about $130,000 toward construction costs on the annex improvements.

## Procedural History

Torres filed suit against Yardeni, bringing claims for common law fraud, fraudulent inducement, fraud by nondisclosure, breach of fiduciary duty, unjust enrichment, and breach of contract. She alleges that Yardeni used the unaccounted for loan money from the Kid's View deal to fund his other business ventures. She also argues that she is not liable for the agreements she made with Yardeni because he committed fraud, and that she does not need to continue paying rent because by virtue of the original 2004 oral partnership agreement, Yardeni granted Torres a 50 percent interest in the Zaragosa Property, making her a co-owner and not his tenant. Yardeni generally denied the allegations and filed counterclaims for various breaches of contract.

Torres seeks damages, an accounting, and attorney's fees from Yardeni. She also sought the temporary injunction which is at the heart of this appeal, alleging that her business eviction from the Zaragosa Property would result in immediate harm to the business and to the children and

4

families the business served, many of whom are on government assistance. Kids View Zaragosa Center, L.L.C. recently entered into Chapter 11 bankruptcy.

At the first temporary injunction hearing in February 2013, Torres testified that Yardeni told her she needed to pay him monthly payments of $10,076 under the lease, plus the cost of insurance and taxes, which amount in total to "approximately $12,000" a month. She testified that she would be willing to pay $6,772 a month, the amount of payments on the two Citibank liens, into the court registry pending trial. She also admitted that she and the business do not have enough assets to buy out Yardeni or to pay him demanded rent for the Zaragosa Property. Yardeni alleged that Torres and the daycare center agreed in the lease to pay ad valorem taxes on the building. Those taxes are currently in arrears, and the Zaragosa Property is subject to a tax lien in addition to the two Citibank liens.

The trial court granted the initial order for a temporary injunction on February 5, 2013, and set the injunction to expire on August 6, 2013, with the handwritten annotation that this was the "day of trial." The temporary injunction prevented Yardeni from locking Appellees out of the Zaragosa Property, filing a forcible detainer action, communicating with Appellee's clients about the pending litigation, and selling or encumbering the Zaragosa Property. Yardeni appealed to this Court. During the pendency of his appeal, the trial date was continued indefinitely, and the temporary injunction expired by its own terms. Before we had the opportunity to dismiss the appeal for mootness, Torres moved to amend and renew her initial temporary injunction order, which the trial court granted pending trial on June 16, 2014. The new temporary injunction reinstates the same restrictions as the previous injunction order, but changes the amount Torres must pay from $6,772 a month to $7,651 a month. Yardeni appealed the amended temporary

5

injunction order.

## Discussion

This Court may take interlocutory appeals only when specifically authorized by statute. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(4)(West Supp. 2013) provides for limited interlocutory review of any order that "grants or refuses a temporary injunction . . . ." *Id*. Because the grant of a temporary injunction forms the core of this case, we have jurisdiction to review issues necessary to the resolution of the injunction's propriety. *Id.* To the extent that any party raises issues outside the scope of the injunction order, we are without jurisdiction to decide those issues unless authorized to do so by another provision of TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a) *et seq.*

### *Temporary Injunction Standard*

Appellants challenge the grant of Torres' amended temporary injunction on two grounds. In Issue One, Appellants contend that the trial court abused its discretion by granting the temporary injunction because Torres and Kids View Zaragosa Center, L.L.C. has no rights or causes of action under the current lease, which names Kids View, Inc. as the tenant. In Issue Two, Appellants also contend that the trial court abused its discretion by granting the temporary injunction when the tenant was in arrears on the ad valorem taxes purportedly owed under the lease.

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To establish eligibility for a temporary injunction, an applicant must prove three elements: "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a

6

probable, imminent, and irreparable injury in the interim." *Id.* We review temporary injunction grants for abuse of discretion, drawing all inferences in favor of the trial court's judgment. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Valenzuela v. Aquino*, 763 S.W.2d 43, 44 (Tex.App.--Corpus Christi 1988, no writ). "When, as here, the trial court does not make findings of fact or conclusions of law, we must uphold the court's order on any legal theory supported by the record." *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex.App.--Corpus Christi 2007, pet. denied). Every temporary injunction order must strictly comply with all formal requirements outlined in TEX.R.CIV.P. 683. *InterFirst Bank San Felipe, N.A. v. Paz Const. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). Any variance from those requirements may render the injunction void. *Id*.

### *Failure to State a Cause of Action against Yardeni*

In Issue One, Appellants contend that the trial court abused its discretion in entering the temporary injunction orders because neither Torres nor Kids View Zaragosa Center, L.L.C. are named as tenants in the lease to the Zaragosa Property. As such, Appellees cannot establish a cause of action against Yardeni under prong one of *Butnaru* that would justify the injunction.

Appellants cast this action too narrowly. Appellees filed suit not only for breach of contract, but for common law fraud, fraudulent inducement, fraud by nondisclosure, breach of fiduciary duty, and unjust enrichment. Torres has provided some evidence that would support a finding on several of these theories. For example, Torres testified that Yardeni made numerous misrepresentations about investing his own money in the project when he instead allegedly entered into a partnership with Torres solely to obtain favorable, inflated personal loans from Citibank to use in other business ventures, earmarking only a portion of those loans to pay for daycare center

7

expenses. Torres contends that but for Yardeni's representations, she would not have entered into a business relationship with him, would not have agreed to pay him anything as reimbursement during the buyout, and would not have signed a lease where the payments funded Yardeni's other business ventures. She also contends that Yardeni had a duty to disclose his financial arrangements and provide her with an accounting as a business partner and fiduciary. This is enough evidence, if taken as true, to show a reasonable likelihood of success on at least some of the fraud and breach of fiduciary duty claims. *See Sands v. Estate of Buys*, 160 S.W.3d 684, 687 (Tex.App.--Fort Worth 2005, no pet.)(temporary injunction applicant "need not establish that it will finally prevail" at trial, but it must provide "some evidence" that "tends to support" its cause of action). As such, the temporary injunction with regard to her is proper.

Further, we also find that the trial court did not abuse its discretion in implicitly determining that Kids View Zaragosa Center, L.L.C. also had standing to seek the injunction order. Torres testified that there may exists up to three separate leases for the Zaragosa Property, including one that lists Kids View Zaragosa Center, L.L.C. as the current tenant. Neither side has presented any written confirmation of any lease, whatsoever, and Appellants do not offer any affirmative evidence demonstrating that Torres was untruthful. The trial court, sitting as fact finder, has the discretion to believe or disbelieve Torres' testimony, and we may not disturb that finding so long as the issue of Kids View Zaragosa Center, L.L.C.'s status as a tenant fell within the "zone of reasonable disagreement." *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)(holding that "[a] reviewing court cannot substitute its judgment for that of the trier-of-fact" where facts are disputed). If the trial court believed Kids View Zaragosa Center, L.L.C. was a tenant, then it could have also believed that the eviction may have been in breach of contract, and

8

that there was a likelihood of success on that claim on the merits. Even absent the contract, the trial court could have also found that Torres was a 50 percent owner of the Zaragosa Property, entitling her to allow Kids View Zaragosa Center, L.L.C. to occupy the space as tenants in the absence of an agreement with Yardeni.

Both Torres and Kids View Zaragosa Center, L.L.C. provided some evidence that would establish the necessary elements under *Butnaru*. Issue One is overruled.

### *Failure to Provide for Ad Valorem Tax Payments as Abuse of Discretion*

In Issue Two, Appellants argue that the trial court abused its discretion when it failed to include the cost of the ad valorem taxes on the Zaragosa Property purportedly owed under lease terms in the monthly sum it ordered Torres to pay into the court registry. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). Here, we do not find that the trial court abused its discretion in ordering Torres to pay $7,651 a month. Torres testified that the payments for the Citibank liens were $6,772, and that she felt that was all she should pay since she is purportedly a co-owner of the Zaragosa Property and not Yardeni's tenant. The initial temporary injunction ordered Torres to pay $6,772 a month. At the hearing for the amended temporary injunction, counsel for Torres informed the trial court that Torres would voluntarily increase the amount of money tendered to the court per month based on a change in lien payment information related by Yardeni's counsel. Thus, the trial judge did not act "without reference to any guiding rules or principles" but instead entered a temporary injunction order reflecting the change in payment on the Citibank liens. The judge had wide discretion to tailor the temporary injunction order to the situation at hand. On these facts, we will not second-guess the trial court's

9

determination that $7,651 a month is a fair amount for Torres to pay Yardeni while the temporary injunction is in place. Issue Two is overruled.

### *Statute of Frauds*

In Issue Three, Appellants contend that evidence of the 2004 oral agreement between Yardeni and Torres is barred by the Statute of Frauds, or, in the alternative, by the Statute of Limitations. We note that the subject matter of this claim falls outside the scope of the temporary injunction order. "An order granting a temporary injunction should not adjudicate the issues." *See Univ. of Tex. Medical School at Houston v. Than*, 834 S.W.2d 425, 428 (Tex.App.--Houston [1st Dist.] 1992, no writ). As such, interlocutory review of this issue on the merits is improper. *See Tipps*, 842 S.W.2d at 272. We decline Appellants' invitation to stray beyond our statutory mandate and render an advisory opinion on his Statute of Frauds and Statute of Limitations claims, and dismiss this portion of the appeal for lack of jurisdiction. Issue Three is dismissed.

Having overruled Appellants' Issues One and Two, we affirm the trial court's judgment.


December 19, 2013

                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

10