**Jorge H. Zaragosa FUENTES, Rodrigo Mendoza Delgado, and Jose Luis Chaparro Amparan, Appellants,**

**v.**

**UNION DE PASTEURIZADORES DE JUAREZ SOCIEDAD ANONIMA DE CAPITAL VARIABLE, Appellee.**

No. 08-16-00155-CV

Court of Appeals of Texas, El Paso.

June 23, 2017

ATTORNEY FOR APPELLANTS: Hon. David R. Pierce, Pierce, Little & Madrid PC, 221 N. Kansas, Ste. 1301, El Paso, TX 79901, Hon. Hugo Madrid, Pierce & Little PC, 221 N. Kansas, Suite 1301, El Paso, TX 79901.

ATTORNEY FOR APPELLEE: Hon. Jeff H. Ray, Ray, Valdez, McChristian & Jeans, P.C., 5822 Cromo, Suite 400, El Paso, TX 79912.

Before McClure, C.J., Rodriguez, and Palafox, JJ.

## OPINION

YVONNE T. RODRIGUEZ, Justice

In this accelerated appeal, Appellants Jorge Zaragosa Fuentes, Rodrigo Mendoza Delagado; and Jose Chaparro Amparan ask this Court to dissolve a temporary injunction requiring them to turn over certain financial documents allegedly located in El Paso, Texas, to Union de Pasteurizadores de Juarez (UPJ), a Mexican corporation, pending trial on a conversion claim brought by UPJ.

We will affirm the trial court's temporary injunction order.

## BACKGROUND

### *Factual History*

■ This battle for documents arises out of a larger dispute between two brothers, both of whom seek to control UPJ, a dairy in Mexico that at one time operated plants in the cities of Mexicali and Guadalajara. Pedro Zaragosa is president of UPJ; his brother Jorge Zaragosa is a shareholder.[1] The Zaragosa Brothers shared interests in many joint business ventures together, but after an apparent falling out, the brothers in 2009 entered into negotiations in an attempt to divide

their assets. UPJ is one of the assets at issue in this overarching corporate divorce.

UPJ maintains that by Mexican law, the company was required to keep its corporate records at its plant in Mexicali. UPJ alleges that in November 2012, shareholding brother Jorge Zaragosa unlawfully took control of the Mexicali plant. Thereafter, in November 2012 and November 2013, UPJ accountant Oscar Holguin Rojas, who was responsible for checking UPJ's accounting on a monthly and annual basis, attempted to enter the Mexicali plant to retrieve financial records. He was denied entry both times. In 2013, UPJ's Guadalajara plant ceased operations.

In April 2015, the Servicio de Administración Tribuatria (SAT)—the Mexican equivalent of the United States Internal Revenue Service—ordered an audit of UPJ's finances from fiscal year 2013. UPJ alleges that the relevant financial documents needed to comply with the SAT audit had been located in the Mexicali plant, but subsequently went missing. In December 2015, UPJ obtained a search warrant to enter the Mexicali plant in search of its financial records. No records were found.

On January 12, 2016, UPJ accountant Holguin met with Jorge Zaragosa, his associates Chaparro and Mendoza, and others in El Paso, Texas, to discuss the records. All parties agree that Appellants did not produce the records at that meeting. As discussed in further detail below, the parties diverge on the issue of whether

1. Although this case involves a Mexicàn corporation as plaintiff and actions that take place substantially in Mexico, we are satisfied that this Court and the court below have both personal and subject-matter jurisdiction. *See Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 278 (Tex. App.—El Paso 2005, no pet.)(court of appeals has *sua sponte* duty to review ·jurisdiction).

UPJ has alleged that the documents at issue are located in El Paso, Texas; the defendants allegedly maintain residences and businesses in El Paso, Texas; there are no special appearances challenging the trial court's jurisdiction over the defendants appearing in this record; and the defendants never filed a motion to dismiss for forum non conveniens.

Appellants admitted to holding the documents in El Paso at the meeting.

### Procedural History

On April 7, 2016, UPJ brought a conversion action and a temporary restraining order against Appellants in the 41st District Court of El Paso County, Texas. Thereafter, UPJ filed an application for a temporary injunction. At the injunction hearing, Mendoza and Chaparro both testified that they did not have the documents, and they denied ever stating to Holguin at the January meeting that they had the documents. Chaparro admitted that he understood which documents were at issue based on the petition filed by UPJ, but he continued to deny possessing any documents. On rebuttal, accountant Holguin testified that Appellants told him that they were in possession of the documents. Holguin further testified that he made a recording of that meeting on his cell phone. In excerpts Holguin played during the hearing, a man Holguin identified as Mendoza acknowledged having possession of the documents and appeared to suggest that the documents would be returned in exchange for Pedro Zaragosa relinquishing control of UPJ.

At the end of the hearing, the trial court orally stated that it found the testimony of UPJ's witnesses to be credible and the testimony of Appellants' witnesses not to be credible. The trial court then issued an injunction order, which stated in relevant part:

ACCORDINGLY, IT IS HEREBY ORDERED as follows:

1. That Defendants Jorge Zaragosa, Rodrigo Mendoza and Jose Luis Chaparro and their agents, servants, representatives, employees, and all those working in concert with them are hereby enjoined from altering, destroying, modifying, hiding, withholding or otherwise failing to produce forthwith all business records of Plaintiff and Defendants are hereby enjoined from denying Plaintiff and its agents, employees, and/or contractors from having immediate possession of, and unfettered access to all data, information and records, constituting the business records of the Plaintiff, and the Court hereby mandates that Defendants immediately (not less than 48 hours from the date and time of received service or actual notice of this order) surrender to Plaintiff all records described and listed on the attachment to this Order, which is incorporated by reference for all purposes at Exhibit 'A.'

This Order shall be effective upon the filing of a bond in the amount of $2,000.00 payable to the the [sic] Defendant, or the deposit of cash or equivalent in the same amount to be held in the funds registry of the District Clerk.

The trial court accepted a $2,000 cash deposit in lieu of an executable bond instrument. This appeal followed.

### DISCUSSION

On appeal, Jorge Zaragosa, Mendoza, and Chaparro urge us to reverse the trial court's temporary injunction order for six reasons. In Issue One, Appellants maintain that UPJ cannot establish a probable right of recovery because the company's cause of action for conversion would be barred by the statute of limitations at trial. In Issue Two, Appellants assert that UPJ failed to establish the irreparable injury element necessary to obtain an injunction because the company could be adequately compensated after trial with money damages, rendering equitable relief inappropriate. In Issues Three and Four, Appellants

argue that UPJ's claims for damages are speculative and the trial court's fact-findings underpinning the injunction are conclusory. In Issue Five, Appellants contend that the injunction order fails to comply with Tex.R.Civ.P. 683's specificity requirement because the order is confusingly worded and subject to more than one interpretation. In Issue Six, Appellants request that we find the injunction order is void because the bond UPJ tendered was ineffective.

None of Appellants' points warrant reversal.

### Standard of Review and Applicable Law

A temporary injunction is an extraordinary equitable remedy whose purpose is to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We review a trial court's ruling on a temporary injunction for abuse of discretion. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied). Under this standard, we will not reverse the trial court unless it acted arbitrarily and unreasonably without reference to guiding rules or principles, or unless the trial court misapplied the law. *Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 589-90 (Tex.App.—Texarkana 2004, no pet.). "A trial court does not abuse its discretion if it bases its decision on conflicting evidence and at least some evidence in the record reasonably supports the trial court's decision." *Frequent Flyer Depot, Inc.*, 281 S.W.3d at 220.

Temporary injunctions do not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. "To be entitled to a temporary injunction, the applicant must [1] plead a cause of action and further show both [2] a probable right to recover on that cause of action and [3] a probable, imminent, and irreparable injury in the interim." *Frequent Flyer Depot, Inc.*, 281 S.W.3d at 220. "No temporary injunction may issue unless the applicant offers competent evidence in support of his or her application to the trial court at the hearing on the temporary injunction, according to the standard Rules of Evidence." *Bay Fin. Sav. Bank, FSB*, 142 S.W.3d at 589-90. "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ." Tex.R.Civ.P. 683.

We note that when a trial judge issues a temporary injunction pending trial, there is not yet a final judgment at bar, meaning the injunction order is interlocutory. This Court may entertain appeals of interlocutory orders only when specifically authorized by statute. *Yardeni v. Torres*, 418 S.W.3d 914, 917 (Tex.App.—El Paso 2013, no pet.). The Civil Practice and Remedies Code provides for interlocutory review of any order that "grants or refuses a temporary injunction. . . ." Tex.Civ.Prac.& Rem.Code Ann. § 51.014(a)(4)(West Supp. 2016). Thus, jurisdiction in this Court is proper, but the scope of our review here is limited: "the only question before the trial court [was] whether the applicant is entitled to preservation of the status quo pending trial on the merits." *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). "[A] party may not use an appeal of a temporary injunction ruling to get an advance ruling on the merits." [Internal citation and quotation marks omitted]. *Babu v. Zeeck*, 478 S.W.3d 852, 855 (Tex.App.—Eastland 2015, no pet.). Because the trial court has not issued a final judgment, any determinations we make on merits issues

would result in an advisory opinion exceeding the scope of our jurisdiction. *Dallas/Fort Worth Int'l Airport Bd. v. Ass'n of Taxicab Ops., USA*, 335 S.W.3d 361, 364-65 (Tex.App.—Dallas 2010, no pet.). As such, when presented with ancillary merits arguments that do not deal with whether preservation of the status quo pending trial is warranted, we should decline to reach those issues and dismiss them for want of jurisdiction "until the trial court has an opportunity to consider them and issue a final judgment." *Id.*

### Issue One:

### Does UPJ Have a Probable Right to Recover on Its Conversion Action?

■ We begin with whether UPJ has a probable right to recover on its conversion action. In Issue One, Appellants assert that the trial court erred in granting UPJ a temporary injunction because the two-year statute of limitations for conversion[2] has conclusively run, rendering a favorable judgment on the merits for UPJ not only improbable, but legally impossible. We lack jurisdiction to address this issue on interlocutory review, as the statute of limitations argument implicates a merits point beyond our reach at this stage of litigation.

■ "We recognize that courts are often particularly careful when it comes to the element of 'probable right of recovery,' sometimes referred to as 'likelihood of success on the merits,' because, by its plain language, this element seems to infringe

upon two well-engrained judicial prohibitions: against advisory opinions and against forming opinions about the merits of the case before the conclusion of the evidence." *Intercontinental Terminals Co., L.L.C. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex.App.—Houston [1st Dist.] 2011, no pet.). An injunction applicant does not need to show it will prevail at trial to establish a probable right to relief; rather, "to show a probable right of recovery, the applicant must plead a cause of action and present some evidence ... sufficient to raise a bona fide issue as to the applicant's right to ultimate relief." [Internal citations and quotation marks omitted]. *Regal Entm't Grp v. iPic-Gold Class Entm't, L.L.C.*, 507 S.W.3d 337, 345 (Tex.App.—Houston [1st Dist.] 2016, no pet.).

In *Yardeni v. Torres*, this Court summarily declined to address a statute of limitations argument raised on an interlocutory temporary injunction appeal, stating that we believed we would "stray beyond our statutory mandate and render an advisory opinion" on the merits by addressing the limitations argument. *See* 418 S.W.3d at 920. *Yardeni* was never appealed to the Texas Supreme Court, nor have we ever overruled it; thus, it binds us as precedent. Following our approach in *Yardeni* we decline to address Appellants' statute of limitations arguments on this interlocutory appeal, as that would require us to reach a potential merits question and render an advisory opinion.

■ Issue One is dismissed for want of jurisdiction.[3]

---

**2.** *See* Tex.Civ.Prac.&Rem.Code Ann. § 16.003(a)(West 2017).

**3.** In any event, even if we were incorrect in *Yardeni* and we can theoretically consider statute of limitations issues as part of our probable right to relief analysis in straightforward cases, we would still overrule Issue One in this case because the limitations issue here

is so complex and so enmeshed with the merits issue that there is a bona fide issue as to ultimate relief, making interlocutory resolution of this question is inappropriate.

UPJ did not need to conclusively establish that its cause of action accrued during the statute of limitations period to obtain the temporary injunction; rather, UPJ needed only to provide evidence "tending to sustain" a find-

## Issue Two:

### Does UPJ Have an Adequate Remedy at Law?

In Issue Two, Appellants assert that UPJ did not establish that it would suffer an irreparable injury worthy of an equitable remedy because UPJ could be adequately compensated at law through monetary damages. We disagree.

"The general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law." [Internal citations and quotation marks omitted]. *Butnaru*, 84 S.W.3d at 210. "The party requesting the injunction has the burden to establish that there is no adequate remedy at law for damages." *Reach Grp., L.L.C. v. Angelina Grp.*, 173 S.W.3d 834, 838 (Tex.App.—Houston [14th Dist.] 2005, no pet.). "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex.App.—Houston [1st Dist.] 2003, no pet.). "An injunction will not issue if damages are sufficient to compensate the plaintiff for any wrong committed by the defendant and if the damages are subject to measurement by an ascertainable pecuniary standard." *Tom James Co. v. Mendrop*, 819 S.W.2d 251, 253 (Tex. App.—Fort Worth 1991, no writ).

In the context of this particular case, the operative question is this: if the status quo of the documents changes in the interim period preceding trial, would monetary damages awarded after trial make UPJ whole to the same extent as a preliminary injunction that preserves the status quo?

The answer here is no.

Appellants allege that the evidence conclusively establish that UPJ's damages are money damages resulting from potential tax penalties in Mexico, and that no other testimony would establish a non-monetary injury to UPJ. Thus, even if the documents are not turned over in time to comply with the audit, UPJ can still be made whole after trial by receiving damages equivalent to whatever the SAT penalty will be. We doubt that post-trial damages equivalent to whatever fines UPJ incurs would be "as complete, practical, and efficient to the prompt administration of justice" as simply allowing UPJ to have access to the documents to comply with a pending government audit until ultimate title to the

ing of a probable right of recovery at trial. The burden of proof to establish an affirmative defense like statute of limitations falls on the defendants—here, the Appellants. Appellants failed to negate UPJ's probable right to recovery as a matter of law. There is a likely fact issue here on when the conversion action accrued. When multiple persons have varying lawful rights over an object, a cause of action for conversion accrues when the possessor has "unequivocally exercised acts of domination over the property inconsistent with the claims of the owner...." *Wells Fargo Bank Northwest, N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 700 (Tex.App.—Dallas 2012, no pet.). Here, resolution of the limitations question turns, in part, on who was the rightful "owner" of the documents in the first place. This questions is not ripe for resolution on interlocutory appellate review. Additionally, Appellants proffer two accrual dates that fall outside the statute of limitations—November 2012 and November 2013, when UPJ accountant Holguin was denied entry into the Mexicali plant where the records were supposed to be kept. UPJ maintains that the cause of action accrued when UPJ officials met with Appellants and Appellants allegedly refused to turn over UPJ's financial documents until Pedro Zaragosa resigned as UPJ's president. These conflicting dates, especially when paired with potential discovery rule or fraudulent concealment tolling issues, threaten to drag us into rendering a premature advisory opinion. We will decline that invitation here.

documents can be decided at trial. Nevertheless, even if Appellants' theory were correct and post-trial damages could make UPJ whole for fines incurred, UPJ faces more than fines for failing to comply with the SAT audit. Holguin testified that without the information contained in the documents, UPJ and others could be subject not only to fines, but also to civil and criminal actions in Mexico. We believe that under these circumstances, the threat of civil and criminal action against UPJ constitutes irreparable harm, and that the trial court's issuance of a temporary injunction allowing for possession and access to the documents and the information contained therein was a proper exercise of equitable relief.

UPJ showed the potential for irreparable harm and the lack of an adequate remedy at law. Issue Two is overruled.

### Issue Three:

### Does UPJ Allege Only Speculative, Non-Immediate Harm?

■■■ In an issue closely related to irreparable harm, Appellants argue in Issue Three that UPJ's assertion that it would suffer *immediate* harm is speculative at best. Essentially, Appellants maintain that even if the threat of a SAT audit could constitute irreparable harm, the actual likelihood of enforcement action against UPJ is too low and too conjectural at this point in time to warrant the issuance of temporary injunctive relief in this case. We again disagree.

■■■ "The injury to be prevented by the granting of a temporary injunction is an immediate injury and not merely an injury that may arise at some point in the future." *Crawford Energy, Inc. v. Tex. Indus., Inc.*, 541 S.W.2d 463, 467 (Tex.Civ. App.—Dallas 1976, no writ). "An injunction is not proper when the claimed injury is merely speculative[.]" *Frequent Flyer Depot, Inc.*, 281 S.W.3d at 227. "[F]ear and apprehension of injury are not sufficient to support a temporary injunction." *Id.*

In support of their argument, Appellants point to testimony from UPJ account Holguin. At the temporary injunction hearing, Holguin testified that UPJ's failure to comply with the SAT audit could result in 500 million pesos' worth (approximately $12 million) of tax consequences. Holguin added that Mexican tax authorities could potentially raise that amount by applying late fees and penalties. The lynchpin of Appellants' argument is that because Holguin said that UPJ's tax liability could be 500 million pesos *or* it could be more than that once late fees are assessed, UPJ's claim of harm is conjectural and speculative.

This argument is entirely unavailing.

Appellants' quibbles over the full extent of the harm that could befall UPJ as a result of the SAT audit do not undercut the trial court's ruling or otherwise void the injunction. The heart of the issue is whether UPJ established the potential for *immediate* harm. Holguin's testimony establishes with reasonable certainty that UPJ is not pursuing an injunction out of some attenuated "fear and apprehension" of a future injury; UPJ is under audit by the SAT, and harm *will* befall UPJ in the form of tax penalties if the documents and information contained therein are not provided to Mexican tax authorities. At the hearing, Appellants presented no evidence to the contrary. The fact that the ultimate amount UPJ may owe is in dispute and may change as time progresses does not make UPJ's fear of immediate harm conjectural. We reject this argument outright.

■■■ In a more compelling alternate subpoint, Appellants assert in their brief that the SAT audit has, in fact, been sus-

pended, and that absent the threat of the audit, UPJ's fear of harm and tax consequences becomes entirely speculative. Unfortunately, to prove that SAT offered to settle and suspended the audit, Appellants point only to a partial reporter's record transcript of a post-appeal October 2016 show-cause hearing in which an unidentified speaker purported to be UPJ corporate representative Yuri Eugenio Chavero supposedly relayed details of the audit's status. The reporter's record from this hearing does not appear in the appellate record; it is only appended, in part, to Appellants' brief as Appendix D. "It is well established that documents attached to an appellate brief which are not part of the record may generally not be considered by the appellate court." *Robb v. Horizon Cmtys. Improvement Ass'n, Inc.*, 417 S.W.3d 585, 589 (Tex.App.—El Paso 2013, no pet.). While methods exist to supplement the appellate record to include other material that may not appear in the record as constituted, "[t]he attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered." *Id.* We cannot overturn the trial court's injunction decision based on extra-record evidence. We must take the record as we find it. Absent any competent record proof that UPJ is no longer under threat of audit, we cannot overturn the trial court's temporary injunction order on this ground.

UPJ established that its fear of *immediate* irreparable harm was well-founded, not speculative or conjectural. Issue Three is overruled.

### Issue Four:

### Were the Trial Court's Findings Supported by Evidence?

In a catch-all point, Appellants broadly assert in Issue Four that the trial court's findings in the temporary injunction order are conclusory and not supported by facts. We construe this issue as raising a legal sufficiency challenge, with Appellants attacking three specific sets of fact-findings underpinning the order. However, we reject those attacks, as the specific fact-findings Appellants identified have either already been disposed of earlier in this opinion or else are unnecessary to the resolution of this appeal.

First, in sub-point (a), Appellants complain that "UPJ did not present any evidence to establish that ... UPJ would likely prevail on the merits as previously argued[.]" However, Appellants' coordinately-briefed appellate point dealing with likelihood of success on the merits (Issue One) frames the issue entirely in terms of the statute of limitations. As we stated in Issue One, we would not reach the limitations issue at this stage of litigation; it is not ripe for our review. To the extent that Appellants are arguing beyond the scope of the limitations issue and suggesting more broadly that UPJ failed to establish the element of likelihood of success on the merits with legally sufficient evidence, the issue is waived for lack of adequate appellate briefing.

The remaining two sets of fact-findings at issue deal with extraneous findings made by the trial court with respect to potential business interruption and interference. In sub-point (b), Appellants complain that UPJ never provided competent evidence to show that "absent injunctive relief, UPJ would suffer immediate and irreparable harm and damage through the loss of customers, damage to its business relationships with clients, benefit providers, vendors, loss of good will, and that its business reputation would be permanently injured[.]" In sub-point (c), Appellants maintain that there is no evidence to

show that "UPJ's failure to have possession of the data, information, and records concerning all of UPJ's customers, suppliers, employees, collective bargaining partners, creditors and other records would injure UPJ's ability to maintain the existence of the corporation, to properly operate its business, and that it would sustain other damages."

■ We need not reach the merits of these complaints, either. This Court does not need to address every alternative ground stated in an order if one meritorious ground would uphold the entire order. *See State v. Ninety Thousand Two Hundred Thirty–Five and no cents in U.S. Currency ($90,235.00)*, 390 S.W.3d 289 (Tex. 2013)(court of appeals did not need to discuss alternative grounds for summary judgment after upholding summary judgment on one meritorious ground). In Issue Two, we held that the threat of civil and criminal penalties in Mexico constituted potential immediate harm. We can uphold the issuance of the temporary injunction on that ground alone. As such, addressing the ancillary issue of whether UPJ also established potential harm vis-à-vis the alternative grounds of loss of reputation, loss of customers, business interruption, or the like is unnecessary to the resolution of the appeal. *See* Tex.R.App.P. 47.1.

Issue Four is overruled.

### Issue Five:

### Was the Trial Court's Temporary Injunction Order Sufficiently Clear as Required by Tex.R.Civ.P. 683?

■ "An injunction must be definite, clear, and concise, leaving the person enjoined in no doubt about his duties, and should not be such as would call on him for interpretations, inferences, or conclusions." *Vaughn v. Drennon*, 202 S.W.3d 308, 316 (Tex.App.—Tyler 2006, no pet.). In Issue

Five, Appellants aver that the injunction order is unclear as to which documents or materials they must produce to UPJ.

■ Attachment A to the temporary injunction order, which mirrors the English translation of the Spanish-language list of documents identified by UPJ, commands Appellants to turn over several documents. Appellants complain about the following documents in their brief:

a. Monthly statements of UPJ's financial situation (Balance Sheets);

b. Monthly verification balances;

c. Monthly auxiliary statements from the greatest of all verification balances' accounts and subaccounts;

d. Income, expenses and Daily policies, as well as supporting documents;

e. *Copy* of accounting programs and other auxiliary programs;

f. Register of tax invoices, issued and received in printed and electronic form;

g. Personnel files;

h. Inspections or review by the Ministry of Labor & Social Welfare (Secretaria del Trabajo y Prevision Social 'STPS'), IMSS, State Government, and INFONAVIT;

i. Reports of work accidents and work disability risks;

j. Certified copies of real estate deeds;

k. Determination of certificates of ISR ('Impuesto Sobre la Renta') and IVA ('Impuesto al Valor Agregado') withheld and the corresponding amounts in cash to make the payment;

l. Certificates and calculations of provisional payments to ISR, IVA, IEPS, and IETU ('Impuesto Empresarial a Tasa Unica');

m. Determination of certificates of credible and payable IEPS (Impuesto Especial Sobre Produccion y Servicios);

n. All records of contingent liabilities;

o. Reviews from federal, state, or municipal authorities that have been attended, ongoing, and/or pending; and

p. *Original and executed copies* of all contracts, agreements, or arrangements of any kind with any and all unions or organized labor group, including CCT, with any individual workers, suppliers, creditors, service providers, and internal labor regulators. [Emphasis in orig.].

Appellants contend that this list is "confusing" and "difficult to understand." But UPJ counters that the testimony of Appellant Chaparro belies these complaints. When asked directly at the hearing, Chaparro testified that he understood which documents were at issue:

Q. Would you, please turn to page 4 of that document, the Temporary Restraining Order, sir? Would you please take a few minutes—as you see Exhibit A to the Temporary Restraining Order, would you, please read each item of documents that are identified on that piece of paper? And it runs from page 4 to page 7, sir.

A. Well, they are in English. I don't understand them very well. But if they were in Spanish, it would be better.

. . .

Q. Okay. You read this document, and you understood what they were requesting from you. Do you understand that?

A. Well, yes, I do understand it, of course, but I don't have anything.

We are satisfied that under the circumstances the list is objectively specific to put Appellants on notice of what they are required to produce, and that Appellants subjectively understand what documents they are required to produce.

Appellants also argue that the injunction is void because it requires them to produce both the originals of documents and any copies. In support of this contention, Appellants cite *In re Houston*, 92 S.W.3d 870, 877 (Tex.App.—Houston [14th Dist.] 2002, orig. proceeding). But *Houston* did not hand down a rule that says a temporary injunction order is void if the trial judge requires a party to turn over both originals and copies of a document. Rather, the issue in *Houston*, a habeas corpus case, was whether an injunction order was sufficiently specific so as to be enforceable through contempt proceedings. The order in that case required the subject to copy "all files," retain the copies, and return "the original policy files and their complete contents" to the opposing side. *Id.* The subject of the injunction tendered the original policy files, but the trial court held him in contempt, interpreting the order to mean that the subject was required to return "all files" in his possession. The Fourteenth Court of Appeals held that the subject could not be held in contempt since the injunction order was not sufficiently specific to provide the subject with notice of what conduct was required, i.e. whether he was required to return "all files" or simply "the original policy files." *Id.*

*Houston* is distinguishable both because we are not dealing with the heightened quasi-criminal standard applicable to contempt proceedings in this case, and because the temporary injunction order in this case is clear as to which items are required to be originals and which items are required to be copies. Appellants complaints about the vagueness of the list do not merit appellate reversal.

Issue Five is overruled.

### *Issue Six:*

### *Did the Trial Court Err by Having UPJ Pay Bond Money Earmarked for the Defendants into the District Clerk's Registry Instead of Making a Bond Payable Directly to the Defendants?*

Finally, in Issue Six, Appellants contend the injunction order is void be-

cause UPJ never filed a sufficient bond as required by Tex.R.Civ.P. 684. Appellants are incorrect. UPJ deposited $2,000 into the court's registry, and the trial court found that this amount represented a sufficient bond. To the extent that Appellants argue that the bond is defective because UPJ tendered a cash payment to the court in lieu of executing an instrument payable to Appellants, we reject that premise. Cash deposited in the court's registry may constitute a proper bond under Tex. R.Civ.P. 684. *See Adobe Oilfield Srvs., Ltd. v. Trilogy Op., Inc.*, 305 S.W.3d 402, 404-05 (Tex.App.—Eastland 2010, no pet.).

Issue Six is overruled.

## CONCLUSION

Appellants have failed to show any error warranting appellate reversal of the temporary injunction order. The judgment of the trial court is affirmed.