

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00105-CV

---

Nidal T. Baem, Appellant

v.

Western Frontier Trading, LLC, Appellee

---

On Appeal from the 41st Judicial District Court
El Paso County, Texas
Trial Court No. 2025DCV0635

---

## MEMORANDUM OPINION

In this interlocutory appeal, Appellant Nidal T. Baem challenges the trial court's order temporarily freezing all First National Bank of Texas accounts held in his name. Funds allegedly embezzled from Appellee Western Frontier Trading, LLC were deposited into one such account. We reverse in part, affirm in part, and remand to the trial court to modify its order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Western describes itself as "a wholesaler in the El Paso County region" that "provides goods to area vendors" and "relies on its employees to service accounts and on occasion collect checks[.]" Baem was an employee of Western whose duties included "delivering, invoicing and

collecting payment for merchandise[.]"

Western sued Baem for theft, conversion, and breach of fiduciary duty, alleging that he "ha[d] customers write checks directly to him and deposit[ed] said checks into his own account." Western also sought a temporary injunction enjoining Baem from "liquidating all the funds contained in the accounts held at FIRST NATIONAL BANK TEXAS . . . in [Baem]'s name," and requiring the bank "to freeze all funds on account in [Baem]'s name."

The trial court held a temporary injunction hearing at which two witnesses testified—Carlos Moreno, whose company, Audio Fanatics, was a customer of Western, and Erik Broberg, Western's owner.[1]

Moreno testified that he paid for purchases from Western by writing checks to Baem personally. According to Moreno, he did so at Baem's request because Baem said he was Broberg's partner.[2] Moreno further testified that Baem sometimes asked him to pay cash, offering a discount for this form of payment. Moreno also paid a total of $44,993.90 in a series of 43 Cash App transfers directly to Baem.

Broberg testified that he became suspicious of Baem when he "started seeing financial irregularities" and "money would be missing," and "as [he] found more and more and more evidence, it became overwhelmingly obvious [Western] had enough proof [Baem] was embezzling money." According to Broberg, Western identified a specific bank account into which Audio Fanatics' checks had been deposited. In addition, Broberg testified that Baem had bought a plane ticket to fly home to Kuwait, departing on the day before the temporary injunction hearing,[3] and

---

[1] Western's owner is referred to as "Grover" in the reporter's record. We refer to him as Broberg, the name used in Western's pleadings and supporting affidavit.

[2] Baem concedes he was Western's employee and not Broberg's business partner.

[3] Baem did not appear at the hearing.

was "sending money overseas" (ongoing emails received on Baem's former work computer indicated that "several hundreds of dollars a day each day [were] being sent to an individual [overseas, possibly in the Middle East])."

After the hearing, the trial court signed a temporary injunction order enjoining Baem from "liquidating any of the funds contained in the accounts held at FIRST NATIONAL BANK TEXAS" and directing the bank to "freeze all funds in its accounts in [Baem]'s name." The order included a specific finding that "said bank accounts are directly related to the matter at issue in this lawsuit," as "deposits of money belonging to [Western] were deposited in said account." In addition, the trial court entered separate findings of fact and conclusions of law. This interlocutory appeal followed, as permitted under Texas Civil Practice and Remedies Code § 51.014(a)(4).

## II. ISSUES ON APPEAL

On appeal, Baem argues that the trial court abused its discretion by issuing a temporary injunction without evidence of a probable right of recovery, an irreparable injury, or the absence of an adequate remedy at law, and by granting overbroad relief that did not preserve the status quo.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

A temporary injunction serves to preserve the status quo pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). It is an extraordinary remedy and not a matter of right. *Id*. To obtain such relief, a party must plead and prove a cause of action, a probable right to relief, and irreparable injury in the interim. *Id*.

We review an order granting a temporary injunction for an abuse of discretion. *State v. Loe*, 692 S.W.3d 215, 226 (Tex. 2024). Under this standard, we defer to the trial court's factual findings if supported by evidence, but review its legal determinations de novo. *Id*. A reviewing court must not substitute its judgment for that of the trial court unless the trial court's action was so arbitrary it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. In determining

3

whether the trial court abused its discretion, "we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor." *Grossman v. City of El Paso*, 642 S.W.3d 85, 107 (Tex. App.—El Paso 2021, pet. dism'd).

## IV. ANALYSIS

### A. Probable right of recovery

To show a probable right of recovery, a party seeking a temporary injunction must "present enough evidence to raise a bona fide issue as to its right to ultimate relief." *Daugherty v. Ellington*, No. 05-22-00991-CV, 2024 WL 177482, at *5 (Tex. App.—Dallas Jan. 17, 2024, pet. denied) (mem. op.). This means the party must produce "some evidence supporting every element of at least one valid legal theory." *Id*. The party need not "show that it will prevail at trial," nor must the trial court "evaluate the probability that [the party] will prevail at trial" because the ultimate merits are not yet before the court. *Id*.

Baem contends that Western's pleading of its claims is inadequate, as the pleading is "just a recitation of the elements of each cause of action." However, Baem neither discusses nor cites any authority regarding what a proper pleading would minimally require. *See* Tex. R. App. P. 38.1(i) (requiring an appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities"). Further, Western's pleading separately sets forth the alleged facts underlying its claims. Baem does not explain why these alleged facts together with Western's description of its claims do not meet Texas's fair-notice pleading standard. *See id*.; *see also Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 61 (Tex. 2021) ("Texas follows a fair-notice standard for pleading, which measures whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response.") (internal quotation marks omitted). We conclude that Baem has not shown Western's pleading is inadequate.

4

Baem further contends that the record contains no evidence of at least one element of each of Western's claims. We disagree and focus our analysis on the evidence of each element of Western's theft claim. *See Daugherty*, 2024 WL 177482, at *5 (to show a probable right of recovery, the party seeking the temporary injunction must produce "some evidence supporting every element of at least one valid legal theory").

The Texas Theft Liability Act authorizes a civil claim for theft as defined under certain Texas Penal Code provisions. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.002–.003. Under the theory pleaded here, the plaintiff must show that the defendant unlawfully appropriated the plaintiff's property with intent to deprive the plaintiff of it and the plaintiff suffered damages. *See id.*; *see also Cluck v. Mecom*, 401 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); Tex. Penal Code Ann. § 31.03(a). Baem contends that "[w]hile [Western] did provide evidence as to the first and third elements, [it] failed to provide any evidence whatsoever of [Baem's] intent to deprive [Western] of the property." However, the Audio Fanatics checks entered in evidence were made out to Baem personally, not Western, and Broberg testified the checks were deposited into Baem's personal account, not Western's account. Further, the checks spanned a period from April 2022 to June 2023, and suit was not filed until February 2025. This is some evidence that Baem intended to deprive Western of the funds. *See McCullough v. Scarbrough, Medlin & Associates, Inc.*, 435 S.W.3d 871, 907 (Tex. App.—Dallas 2014, pet. denied) ("The intent to deprive can be inferred from the words and acts of the person.").

Baem further contends that "[a]t best, the evidence adduced at the evidentiary hearing demonstrated that Baem may have been transacting business on the side with one of [Western's] vendors," and "[t]here is no evidence, testimonial or otherwise, that the merchandise traded between Carlos Moreno and Baem actually belonged to [Western]." However, Moreno testified that the merchandise in question was "from" Western, that he wrote "Western Frontier" at the

bottom of some of the checks, and that the invoices, when provided by Baem, were from Western. This is some evidence the merchandise belonged to Western. We conclude that Baem has not shown the record lacks evidence of any element of theft.

In addition, Baem argues, "even if [Audio Fanatics'] check [dated April 22, 2022] could be used as evidentiary proof for [Western's] theft claim, this check is way beyond Texas' two-year statute of limitations." In a footnote, Baem adds that "[t]his defense equally applies to all other acts complained about by [Western] in its petition that are beyond the two-years statute of limitations window." However, we have held that we "lack jurisdiction to address [such an] issue on interlocutory review, as [a] statute of limitations argument implicates a merits point beyond our reach at this stage of litigation." *Fuentes v. Union de Pasteurizadores de Juarez Sociedad Anonima de Capital Variable*, 527 S.W.3d 492, 499 (Tex. App.—El Paso 2017, no pet.). Moreover, even if we had jurisdiction to consider this issue, a party asserting a limitations defense must "plead, prove, and secure findings to sustain it." *Urias v. Owl Springs N., LLC*, 662 S.W.3d 561, 567 (Tex. App.—El Paso 2022, no pet.) Baem did not do so here; he raises this issue for the first time on appeal.[4]

## B. Irreparable injury

To be entitled to a temporary injunction, a party must also show that it will otherwise suffer "a probable, imminent, and irreparable injury." *Loe*, 692 S.W.3d at 226. According to Baem, the trial court's conclusion that Western would suffer irreparable injury if the bank accounts in

---

[4] Additionally, as to Western's conversion claim, Baem has not shown the record lacks evidence of any relevant element of conversion. To establish that personal property was converted, a plaintiff generally must show that (1) he owned, legally possessed, or was entitled to possess it; (2) the defendant wrongfully exercised control over it; (3) the plaintiff made a demand for it; and (4) the defendant refused to return it. *Guillory v. Dietrich*, 598 S.W.3d 284, 292 (Tex. App.—Dallas 2020, pet. denied). But demand and refusal are required "only if the defendant acquired possession of the property lawfully and without fault"; conversely, no demand is required "if the defendant initially acquired possession unlawfully or wrongfully." *Id.* Here, Baem contends that "Broberg testified . . . he never confronted Baem about the financial irregularities and had never made a demand for return of the funds prior to filing suit and was therefore never refused by Baem." Moreno's testimony indicates that Baem obtained Western's funds under false pretenses, i.e., Baem asked Moreno to write checks to Baem personally, representing that he and Broberg were partners, which they were not. And Broberg testified that Baem embezzled the funds. Thus, demand and refusal were not required elements.

6

question were not frozen was based in part on findings that: (1) Baem "had arranged travel to Kuwait for March 31, 2025, one day before the injunction hearing"; (2) Baem "was allegedly sending money internationally"; and (3) Baem "left the jurisdiction without notifying his counsel." Baem maintains that "[e]ach of these findings is contrary to the evidentiary record and rests on speculation rather than competent proof."

However, Baem develops no argument disputing either that he bought a ticket for a flight to Kuwait departing on the day before the injunction hearing or that he was transferring hundreds of dollars a day overseas. Baem simply notes that there was "no testimony identifying when the [plane] ticket was purchased,"[5] "the itinerary included a return flight," and "[t]he record only reflects that Baem did not attend the hearing and had a planned trip abroad." But the ticket's purchase, when viewed in the light most favorable to the trial court's order, was some evidence Baem intended to flee the jurisdiction and prevent access to assets.

Baem further argues there was "no evidence of any imminent or even recent dissipation of funds," and Broberg admitted "he had no knowledge of any activity, recent or otherwise, involving the disputed account." However, imminent irreparable injury can be inferred from a defendant's dissipation of assets generally. *See 31 Holdings I, LLC v. Argonaut Ins. Co.*, 640 S.W.3d 915, 927 (Tex. App.—Dallas 2022, no pet.) (concluding that "evidence that [defendants] are selling assets and evading financial obligations supports a reasonable inference of a deteriorating financial condition that would affect [their] ability to fully satisfy a money judgment [for the plaintiff]"). Here, Broberg testified Baem was transferring hundreds of dollars a day overseas—testimony Baem does not dispute. We conclude that Baem has not shown that the record contains no evidence

---

[5] Since the ticket was discovered by Western on Baem's former work computer, Baem reasons that its purchase "presumably [occurred] while [he] was still employed [by Western,]" thus his travel plans "predated the lawsuit and hearing by months." However, this theory does not take into account Broberg's testimony that information relating to Baem was continuing to be received on his former work computer at the time of the hearing.

of imminent irreparable injury.

### C. No adequate remedy at law

Generally, an adequate remedy at law exists if an alleged harm can be "adequately cured by monetary damages." *Reyes v. Burrus*, 411 S.W.3d 921, 924 (Tex. App.—El Paso 2013, pet. denied). Further, a trial court cannot temporarily freeze a defendant's assets "simply to assure future satisfaction of a subsequent judgment[.]" *RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 275 (Tex. App.—Dallas 2019, no pet.). However, a defendant's assets may be temporarily frozen where "there is a logical and justifiable connection between the claims alleged and the acts sought to be enjoined, or where the plaintiff claims a specific contractual or equitable interest in the assets it seeks to freeze." *Id.* at 277.

Here, Baem does not argue there is no evidence of a logical and justifiable connection between the alleged theft of Western's funds and the act sought to be enjoined, i.e., depletion of the account into which the funds were deposited. Rather, Baem contends that freezing of the bank accounts in question was improper because Western neither "seek[s] recovery of specific or irreplaceable property," nor "allege[s] any intangible injury that cannot be remedied by damages"; it merely asserts "monetary claims." However, Baem's authority for this contention—our decision in *Reyes*—did not suggest that "specific or irreplaceable property" or "intangible injury that cannot be remedied with damages" was required. Instead, there the plaintiff sought to freeze the proceeds of a settlement between the defendants and a third party, and we simply concluded that the plaintiff improperly "sought to freeze assets unrelated to the subject matter of her suit against [the defendants] as a means of satisfying a potential judgment." *Reyes*, 411 S.W.3d at 925.

In addition, Baem contends there was no proof that he "had disposed of, or was about to dispose of, assets in a way that would defeat a money judgment," and Western "failed to pursue or even mention alternative legal remedies such as prejudgment garnishment or a writ of attachment."

However, Baem develops no argument and cites no relevant authority in relation to these contentions. *See* Tex. R. App. P. 38.1(i) ("[An appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities[.]").We conclude that Baem has not shown that Western presented no evidence that an adequate remedy at law was lacking.

## D. Scope of relief

While a temporary injunction should be "broad enough to safeguard a party's protectable interests," it should not be "so broad that it prohibits the restrained party from engaging in lawful activities[.]" *Ron v. Ron*, 604 S.W.3d 559, 576 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535, 543 (Tex. App.—San Antonio 2004, no pet.) ("A temporary injunction should be specific enough to inform the defendants of the acts they are refrained from doing, but not so broad as to prohibit the enjoyment of lawful rights."); *Kaufmann v. Morales*, 93 S.W.3d 650, 656 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that temporary injunction was "overly broad because it attempt[ed] to freeze assets and legal rights of the [defendants] unrelated to the [plaintiffs'] claim").

Here, Baem argues the injunctive relief granted by the trial court was overbroad because there was "no evidence that the funds currently held in that [frozen] account were the same as those allegedly misappropriated," and  no "forensic accounting tracing specific funds into that account." However, Baem cites no authority that such accounting evidence was required. And Baem does not dispute Broberg's testimony that Audio Fanatics' checks were deposited by Baem into an account in his own name at First National Bank of Texas.

Baem further contends there is "no evidence that the funds in the [frozen] account were unique or irreplaceable," rather than being "fungible currency." However, Baem cites no authority that funds deposited in a bank account cannot be frozen. *See RWI*, 583 S.W.3d at 278 (affirming

temporary injunction freezing funds in bank account); *Rocklon, LLC v. Paris*, No. 09-16-00070-CV, 2016 WL 6110911, at *14 (Tex. App.—Beaumont Oct. 20, 2016, no pet.) (mem. op.) (same).

Finally, Baem contends that the trial court imposed an overbroad "blanket freeze," and "[t]his is not tailored relief—it is a broad restraint on financial access[.]" While we disagree that the relief granted here was insufficiently tailored for the reason Baem urges—i.e., that the assets were "not specifically identified or proven to be part of the disputed subject matter"[6]—we conclude that the relief granted was overbroad in two other respects.

First, although Broberg testified that Western identified only one bank account into which disputed funds were deposited, the trial court's order directs the First National Bank of Texas to "freeze all funds in its accounts in [Baem's] name." The record reflects no basis to freeze any account other than the one into which disputed funds were deposited.

Second, the trial court's order does not limit the freezing of the relevant account to a dollar amount corresponding to the amount of disputed funds deposited into it. The freezing of funds in excess of this amount, if any, would interfere with Baem's enjoyment of lawful rights. *See RWI*, 583 S.W.3d at 278 (reversing temporary injunction to extent it froze bank account in amount in excess of dollar amount plaintiff had shown was logically and justifiably connected to its claim).

## V. CONCLUSION

For the reasons stated above, we reverse the trial court's temporary injunction order to the extent it directs the First National Bank of Texas to (1) freeze accounts other than the one into which the disputed funds were deposited, and (2) freeze an amount in excess of the dollar amount of disputed funds deposited in the relevant account. In all other respects, we affirm the trial court's order. We remand to the trial court for an evidentiary hearing and entry of a modified temporary

---

[6] As noted above, Baem does not dispute Broberg's testimony that Audio Fanatics' checks were deposited into Baem's account at First National Bank of Texas.

10

injunction in accordance with this opinion.

LISA J. SOTO, Justice

April 16, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.